Appeal No. 13-1708
Appeal No. 13-1795

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

RICHARD L. BROWN,
Plaintiff – Appellee,

v.

JAMES COOPER,
Defendant

SUSAN BROWN-THILL,
Defendant – Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

The Honorable Judge Scott O. Wright, United States District Judge
District Court No.: 4:11-MC-09006-SOW

APPELLANT-CROSS APPELLEE SUSAN BROWN-THILL'S
REPLY BRIEF AND CROSS APPEAL RESPONSE BRIEF

Stacy A. Burrows
George A. Barton
Law Offices of George A. Barton, P.C.
4435 Main Street, Ste. 920
Kansas City, MO 64111
(816) 300-6253
*Attorneys for Appellant*
*Susan Brown-Thill*

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................ii

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF THE CASE...............................................................4

STATEMENT OF THE FACTS.............................................................6

A.  Background..........................................................................6

B.  The February 22, 2011 and March 14, 2011 Arbitration Awards. ..................7

C.  There Is No Evidence of Any Extensive, Improper Ex Parte Contacts With Arbitrator McLeod...............................................................11

ARGUMENT ....................................................................................17

I.  Standard of Appellate Review Regarding Brown's Cross Appeal. ..............17

II.  The Arbitration Agreement Unambiguously Provides That Attorneys' Fees Will Be Awarded To The Responding Party In Any Claim, Dispute or Controversy Pursued By Either Party Outside of The Provided-For Arbitration Proceedings. ................................................................17

    A.  There Is Only One Logical Interpretation of the Relevant Attorneys' Fees Provision of the Parties' Arbitration Agreement. ...........................20

    B.  The FAA Does Not Prevent Parties From Contracting for or Entering Into Agreements That Include An Attorneys' Fees Provision, Even Regarding a Confirmation of an Arbitration Award..............................24

III.  The Prerequisites to Arbitration Were Adequately Followed and Thus, Arbitrator McLeod Did Not Exceed His Powers. ........................................26

Appellate Case: 13-1708     Page: 2     Date Filed: 09/03/2013 Entry ID: 4071272

A.   Questions Regarding Arbitration Procedure Should Be Decided By The Arbitrators Not The Courts. ....................................................................28

B.   Arbitrator McLeod Properly Determined That the Dispute Between Brown and Brown-Thill Had Been Properly Submitted To Him and That the Procedural Requirements For Arbitration Had Been Satisfied. ........28

C.   Arbitrator McLeod Operated Within the Terms of the Arbitration Agreement, Thus There is No Evidence of Any "Manifest Disregard" of The Terms of The Parties' Agreement. ...................................................36

D.   Brown's Argument That Arbitrator McLeod Failed to Comply With The Terms of the Arbitration Agreement Is Also Without Merit. .................39

IV.   Arbitrator McLeod Properly Adhered To The Contractual   Rights and Expectations of The Parties That Is Required Under to the FAA. ................41

A.   Nothing About The March 14, 2011 Arbitration Award Was Intended To or In Fact Amends or Modifies the EDB Trust Agreement or Disregards its Terms. ..............................................................................................42

B.   The District Court Properly Determined That Arbitrator McLeod Did Not Exceed His Powers. ...........................................................................45

C.   Brown and Brown-Thill as Co-Trustees, Contracted for Arbitrator McLeod To Resolve Their Disputes. ......................................................47

D.   Pursuant to Both the SLB Trust and The EDB Trust Agreements, Estate Taxes and Expenses Were To Be Paid By The Trustees. .......................48

V.   Arbitrator McLeod Did Not Exceed His Authority By Signing Documents in Brown's Stead In Order to Further Compliance With The Arbitration Awards. ...................................................................................................50

VI.   Arbitrator McLeod Did Not Commit Any Procedural Misconduct By Refusing to Continue The March 10, 2011 Arbitration Hearing. .................53

Appellate Case: 13-1708     Page: 3     Date Filed: 09/03/2013 Entry ID: 4071272

A.    Brown Was Provided With An Adequate Opportunity Before, During and After the March 10, 2011 To Make His Arguments and Present His Evidence to The Arbitrator......................................................................56

B.    There is No Evidence That Arbitrator McLeod Committed Any Misconduct By Receiving Ex Parte Communications............................57

VII.  The District Court Did Not Err In Concluding that Brown's Allegations That Arbitrator McLeod Exhibited Partiality Were Completely Without Merit...59

CONCLUSION..........................................................................................62

CERTIFICATE OF COMPLIANCE.......................................................63

CERTIFICATE OF SERVICE ...............................................................64

Appellate Case: 13-1708    Page: 4    Date Filed: 09/03/2013 Entry ID: 4071272

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Auto. Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509 (8th Cir. 1983).......................................... 28, 30

*Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers*, 309 F.3d 1075 (8th Cir. 2002)................................................................................41

*Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15 (Mo. banc 1995).....................20

*Carpenter Local No. 1027 v. Lee Lumber & Bldg. Material Corp.*, 1992 WL 253090 (N.D. Ill. 1992) ......................................................................................40

*Ceco Concrete Const., a Div. of Robertson-Ceco Corp. v. J.T. Schrimsher Const. Co., Inc.*, 792 F. Supp. 109 (N.D. Ga. 1992).................................................. 24, 25

*Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382 (8th Cir. 1983) ..................................................................................................................30

*Crawford Grp, Inc.v. Holekamp*, 543 F.3d 971 (8th Cir. 2008)........... 1, 2, 3, 26, 27

*Dow Corning Corp. v. Safety Nat'l Cas. Corp*., 335 F.3d 742 (8th Cir. 2003)...3, 58

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. banc 2003) ....................................................................................................................... 19, 22

*El Dorado Sch. Dist. v. Continental Cas. Co*., 247 F.3d 843 (8th Cir. 2001) .........55

*Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647 (Mo. banc 2009)....19

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)..............................27

v

Appellate Case: 13-1708     Page: 5     Date Filed: 09/03/2013 Entry ID: 4071272

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...............................29

*Grahams Serv. Inc. v. Teamsters Local 975,* 700 F.2d 420 (8th Cir.1982)...... 53, 56

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).......................... 29, 37

*Hoffman v. Cargill, Inc.*, 236 F.3d 458 (8th Cir. 2001)................................ 3, 26, 55

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002) .................……..30, 31

*Ierna v. Arthur Murray Int'l, Inc., et al.,* 833 F.2d 1477 (11th Cir. 1987)..............25

*In re Ziegler's Trusts*, 157 So. 2d 549 (Fla. Dist. Ct. App. 1963) ..........................47

*Int'l. Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Local 493 v. EFCO Corp.*, 359 F.3d 954 (8th Cir. 2004)...........................................2, 30

*Kyocera Corp. v. Prudential-Bache Trade Serv., Inc.,* 341 F.3d 997 (9th Cir. 2003) .................................................................................................................29

*Local No. Int'l Bhd. of Elec. Workers, AFL-CIO v. Matejka Elec., Inc.,* 88-923C(1), 1989 WL 1633032 (E.D. Mo. 1989) ........................................................... 45, 51

*McGrann v. First Albany Corp.*, 424 F.3d 743 (8th Cir. 2005) .............................17

*Mead v. Moloney Sec. Co.,* 274 S.W.3d 537 (Mo. App. 2008) .................................1

*Menke v. Monchecourt*, 17 F.3d 1007 (7th Cir. 1994) .........................................1, 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ............................................................................................ …………….29, 46

*Montez v. Prudential Secs.,* 260 F.3d 980 (8th Cir. 2001). .......................... 3, 59, 60

vi

Appellate Case: 13-1708     Page: 6     Date Filed: 09/03/2013 Entry ID: 4071272

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983). ...................................................... ..............1, 24, 40

*Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 51 F.3d 157 (8th Cir. 1995) ..........................................................................60

*Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987)...............................................52

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013)............................ 36, 37

*ProTech Indus., Inc. v. URS Corp.*, 377 F.3d 868 (8th Cir. 2004) ......... 2, 28, 30, 31

*Schnurmacher Holdings, Inc. v. Noriega*, 542 So. 2d 1327 (Fla. 1989) ................51

*Scott v. Prudential Secs., Inc.*, 141 F.3d 1007 (11th Cir. 1998) ..............................56

*Stark v. Sanberg, Phoenix, von Gontard, P.C.*, 381 F.3d 793 (8th Cir. 2004) ...................................................... ..............3, 27

*State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859-61 (Mo. banc 2006).......20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010)………………………………………………………….2, 31, 38, 39, 51

*Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743 (8th Cir. 1986)........27

*Supp. Med. Servs. v. Medi Plex Health Care*, 293 S.W.3d 128 (Mo. App. 2009)……………………………………… .................................. ..............1, 19

*Swenson v. Bushman Inv. Properties, Ltd.*, 870 F. Supp. 2d 1049 (D. Idaho 2012) ..........................................................................40

*Trimble v. Pracna*, 167 S.W.3d 706 (Mo. banc 2005) ........................................1, 19

vii

*Tubbs v. Hudec,* 8 So.3d 1194 (Fla. Dist. Ct. App. 2009) ....................................2, 45

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167 (9th Cir. 2010)..........58

*Westridge Inv. Grp., L.P. v. McAtee*, 968 S.W.2d 243 (Mo. App. 1998)............2, 46

*White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277 (11th Cir. 2011) ................................................................................................................51

**Federal Statutes**

9 U.S.C. § 10(a) ........................................................................ 1, 2, 5, 26

9 U.S.C. § 10(a)(2)..........................................................................3, 61

9 U.S.C. § 10(a)(3)................................................................................3

9 U.S.C. § 10(a)(4)............................................................................38

9 U.S.C. §§ 1-16................................................................................24

**Appellate Rules**

Fed. R. App. P. 32................................................................................63

Fed. R. App. P. 32(a)(7)(B) ................................................................63

8th Cir. R. 28A....................................................................................63

**Missouri Statutes**

Mo. Rev. Stat. § 456.8-816 ............................................................2, 43

Appellate Case: 13-1708    Page: 8    Date Filed: 09/03/2013 Entry ID: 4071272

**Treatises**

4A Mo. Prac., Probate and Surrogate Laws Manual § 456.8-816 (2d. ed.). ...........44

4A Mo. Prac., Probate and Surrogate Laws Manual § 456.1-111 (2d. ed.)…..44

Appellate Case: 13-1708     Page: 9     Date Filed: 09/03/2013 Entry ID: 4071272

## STATEMENT OF ISSUES

**I.**   Did the district court err in confirming the March 14, 2011 Arbitration Award and Order ("March 14, 2011 Arbitration Award") when none of the exclusive grounds for vacating an arbitration award, articulated in 9 U.S.C. § 10, are present?

- *Trimble v. Pracna*, 167 S.W.3d 706 (Mo. banc 2005);

- *Supp. Med. Servs. v. Medi Plex Health Care*, 293 S.W.3d 128 (Mo. App. 2009);

- *Menke v. Monchecourt*, 17 F.3d 1007 (7th Cir. 1994); and

- *Mead v. Moloney Sec. Co.,* 274 S.W.3d 537 (Mo. App. 2008).

**II.**   Did the district court err in confirming the March 14, 2011 Arbitration Award which resolved an ongoing dispute between Brown and Brown-Thill, as acting co-trustees of the EDB Trust, regarding partnership distributions from two family limited partnerships as was specifically described within the provisions of the March 3, 2010 Arbitration Agreement (the "Arbitration Agreement")?

- 9 U.S.C. § 10(a);

- *Crawford Grp, Inc.v. Holekamp*, 543 F.3d 971 (8th Cir. 2008); and

- *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).

Appellate Case: 13-1708     Page: 10     Date Filed: 09/03/2013 Entry ID: 4071272

**III.** Did the district court err in finding no there was no improper misconduct by Arbitrator McLeod warranting vacatur of the March 14, 2011 Arbitration Award?

- Mo. Rev. Stat. § 456.8-816;

- *Tubbs v. Hudec,* 8 So.3d 1194 (Fla. Dist. Ct. App. 2009);

- *Crawford Grp, Inc.v. Holekamp*, 543 F.3d 971 (8th Cir. 2008); and

- *Westridge Inv. Grp., L.P. v. McAtee*, 968 S.W.2d 243 (Mo. App. 1998).

**IV.** Did the district court err in confirming the March 14, 2011 Arbitration Award, finding that there was no procedural misconduct performed by Arbitrator McLeod?

- 9 U.S.A. § 10(a);

- *ProTech Indus., Inc. v. URS Corp*., 377 F.3d 868 (8th Cir. 2004);

- *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); and

- *Int'l. Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Local 493 v. EFCO Corp*., 359 F.3d 954, 957 (8th Cir. 2004).

Appellate Case: 13-1708    Page: 11    Date Filed: 09/03/2013 Entry ID: 4071272

**V.**   Did the district court err in determining that Brown was not denied a fair hearing pursuant to 9 U.S.C. § 10(a)(3), and therefore Arbitrator McLeod was not guilty of any misbehavior?

- 9 U.S.A. § 10(a)(3);

- *Crawford Grp, Inc.v. Holekamp*, 543 F.3d 971 (8th Cir. 2008);

- *Hoffman v. Cargill, Inc.*, 236 F.3d 458 (8th Cir. 2001); and

- *Stark v. Sanberg, Phoenix, von Gontard, P.C*., 381 F.3d 793 (8th Cir. 2004).

**VI.**   Did the district err in confirming the March 14, 2011 Arbitration Award based on its determination that there was no evidence of any improper ex parte conduct by Arbitrator McLeod which created an impression of possible bias demonstrating evident partiality?

- 9 U.S.A. § 10(a)(2);

- *Dow Corning Corp. v. Safety Nat'l Cas. Corp*., 335 F.3d 742 (8th Cir. 2003); and

- *Montez v. Prudential Secs.,* 260 F.3d 980 (8th Cir. 2001).

Appellate Case: 13-1708   Page: 12   Date Filed: 09/03/2013 Entry ID: 4071272

## STATEMENT OF THE CASE

Brown-Thill's appeal and Brown's cross-appeal arise out of the district court's Order confirming the March 14, 2011 Arbitration Award and Order ("March 14, 2011 Arbitration Award"), and denying Brown-Thill's request for recovery of her costs, losses, and attorneys' fees that she incurred in responding to Brown's Application to Vacate Arbitration Award ("Application to Vacate") in direct contradiction of the unambiguous language of the Arbitration Agreement, which provides for the recovery of the responding parties' attorneys' fees relating to any claim, dispute or controversy brought outside the arbitration proceedings as provided for in the Arbitration Agreement.

On March 14, 2011, Arbitrator McLeod entered the Arbitration Award after considering the evidence, objections, and arguments of both parties to resolve a dispute between Brown and Brown-Thill, as successor co-trustees of the EDB Trust, regarding a trust funding proposal. This dispute was clearly within the purview of the parties' mutually agreed-upon Arbitration Agreement.

One week after Arbitrator McLeod entered the March 14, 2011 Arbitration Award, Brown filed his Application to Vacate. On November 21, 2011, Brown-Thill filed her Motion for Summary Judgment and Confirmation of Arbitration Award.

4

On March 8, 2013, the district court confirmed the March 14, 2011 Arbitration Award concluding that none of the limited reasons enumerated in 9 U.S.C.§10(a) existed and further finding that Arbitrator McLeod had not exceeded his authority, nor was Arbitrator McLeod guilty of any prejudicial or procedural misconduct constituting evident impartiality in making this Arbitration Award.

Brown-Thill's appeal of the district court's Order denying her request to recover her costs, losses and attorneys' fees incurred in responding to Brown's voluminous and convoluted briefing on his Application to Vacate followed the district court's Order.

Appellate Case: 13-1708    Page: 14    Date Filed: 09/03/2013 Entry ID: 4071272

## STATEMENT OF FACTS

Brown-Thill provided a comprehensive Statement of Facts in Appellant Susan Brown-Thill's Opening Brief on Appeal and primarily relies on that previously submitted Statement of Facts. However, with regard to Brown's Statement of Facts, Brown-Thill makes the following observations and submits the following additional Statement of Facts, which are consistent with and supported by the evidence in the record.

### A. Background

James Cooper ("Cooper") was chosen by Saurine L. Brown to be a trustee of the Saurine L. Brown Trust ("SLB Trust") after Saurine's death. (App. 0607-08)[1]. Cooper acted as co-trustee with Saurine's brother Vernon Lotman before Vernon's Lotman's death on February 7, 2011. After Mr. Lotman's death Cooper became the sole trustee of the SLB Trust. (App. 0606)

For many years preceding and following the death of Eugene D. Brown and Saurine L. Brown, Brown and Brown-Thill sought information and clarification regarding the EDB Trust assets, financials reports and documents from Cooper, as the long-time Brown family estate attorney and sole trustee of the SLB Trust, and from Anne Walker, the Brown family accountant. (App. 0084-86, ¶¶5-10; 0184-85; 1122-23).

---

[1] References to Brown-Thill's Appendix have been designated as "App." followed by the page number and paragraph number where appropriate.

6

Both Brown and Brown-Thill, upon becoming successor co-trustees of the EDB Trust, were provided quarterly with substantial information regarding the EDB Trust assets through production of financials that showed every source of income or profit, and each expense by category, through annual income tax statements, and by having access to monitor one of the most significant investment assets through a web-based monitoring system. (App. 1123; 0735-36). The quarterly financials consisting of the Brown Family Consolidated Income Statements and Consolidated Balance Sheets, as well as the annual income tax statements, were provided by the Brown family accountant, Anne Walker, CPA with JMW & Associates. (App. 1123).

B.     **The February 22, 2011 and March 14, 2011 Arbitration Awards.**

There had not been partnership distributions from the Brown family limited partnerships since 2008, and therefore, since before July 2010, the parties had discussed potential distributions from these partnership entities. (App. 1091). Numerous steps, including an appraisal of the Brown family assets held in the Brown limited partnerships, needed to be taken in order to place the Brown family limited partnerships in a position to make the proper distributions. (App. 1091). In February 2011, it was made very clear to all parties that there remained a dispute between Brown and Brown-Thill regarding the EDB Trust's position regarding the necessary appraisals to be conducted. (App. 1092, ¶10). Because of this dispute

7

between Brown and Brown-Thill, there remained a genuine concern as to how the EDB Trust would vote regarding the appraisals, which needed to be conducted before distributions from the Brown family limited partnerships could be completed. (App. 1091-93). Thus, on February 22, 2011, after having heard and considered the positions of both Brown and Brown-Thill via conference call on February 17, 2011, Arbitrator McLeod entered an arbitration award determining that Reuben Paulson and Friend Cooper LLC would be retained to appraise the assets held in one of the Brown family limited partnerships. (App. 0137).

On February 22, 2011, following Arbitrator McLeod's February 22, 2011 Arbitration Award and Order, with the assistance of Anne Walker, and after compiling the necessary documentation and analyzing the numbers, Cooper sent correspondence to Brown and Brown-Thill's counsel containing proposed distributions from the two Brown limited partnerships, 7219 Metcalf LP ("FLP I") and 7219 Metcalf II LP ("FLP II"), in order for these limited partnerships to provide necessary funding of $2,000,000 for the payment of estate income taxes and other expenses (collectively referred to herein as the "Trust Funding Proposal"). (App. 0186, ¶6; 0261-66).

Three days later, on February 25, 2011, Brown-Thill's counsel communicated to Brown and Arbitrator McLeod that Brown-Thill approved the Trust Funding Proposal. (App. 0140; 0186, ¶7). Brown-Thill's counsel also made it

8

clear that if Brown disagreed with the Trust Funding Proposal, "then we would have a dispute between [Brown] and [Brown-Thill] in their capacities as co-trustees of the EDB Trust falling within the arbitration agreement." (App. 0140).

On March 3, 2011 after receiving no suggested changes, approval, or response regarding the Trust Funding Proposal from Brown or his counsel, Cooper prepared and circulated a Notice of Partnership Meeting to be held on March 10, 2011. (App. 0085-86, ¶¶7-9; App. 0186, ¶8; App. 0268-69). Arbitrator McLeod was copied on the correspondence and it was made known that Arbitrator McLeod would participate in the meeting to resolve any dispute between Brown and Brown-Thill in accordance with the Arbitration Agreement, as he had done in the past. (App. 0268).

On March 7, 2013, at 5:01 p.m., clearly in contemplation of the March 10, 2011 partnership meeting in which Arbitrator McLeod would be participating, Brown submitted his own "Memorandum Summary" and "FLP Meeting Notes" to Arbitrator McLeod which included Brown's own additional meeting agendas and his position regarding the Trust Funding Proposal. (App. 0148-153). Brown also requested that the hearing be rescheduled to a later date, claiming "[a]s all parties are aware, there is a conflicting, hearing, also, scheduled for Thursday afternoon, March 10, 2011." (App. 0150). In his correspondence, Brown provided absolutely no other reasoning for why he could not participate in the hearing set for March 10,

9

2011. (App. 0150). Cooper responded, indicating that he had provided all parties, including Brown with opportunity to move the meeting date up, but that he could not delay the meeting due to imminent tax deadlines. (App. 0155-56). Brown-Thill's counsel responded that in his opinion, the "conflicting hearing," which was a case management conference in a related action in front of Judge Youngs, at 2:30 p.m., March 10, 2011, should be brief and that the parties intended to attend both the case management conference and the partnership meeting at 4:00 p.m. (App. 0154). Brown-Thill's counsel did attend both the case management conference in before Judge Youngs, and the hearing at 4:00 p.m. (App. 0275).

At the hearing on March 10, 2011, Brown refused to participate but was represented by his counsel, Mr. Ruzicka. (App. 0275). Although Brown has argued in other pleadings that Ruzicka did not have his authority to vote on Brown's behalf, Brown has repeatedly confirmed that Ruzicka had Brown's authorization to vote as his proxy in other documents filed with the court. (Add. 0007, n.4[2]; 0021-22; App. 0364). At the March 10, 2011 hearing, Brown made various arguments against the Trust Funding Proposal and provided evidence to Arbitrator McLeod before, during, and after the hearing, all of which Arbitrator McLeod

---

[2] References to Brown-Thill's Addendum, which was filed with the Appellant's Opening Brief on Appeal, have been designated as "Add." followed by the page number and paragraph number or letter where appropriate.

10

acknowledged he would consider before making a ruling on the subject matter. (App. 1126-1127, ¶¶8-11).

On March 14, 2011, after considering Brown and his counsel's numerous objections, competent information from various sources, the Trust Funding Proposal, and both Brown's and Brown-Thill's positions on the Trust Funding Proposal, Arbitrator McLeod ordered that the proposed partnership distributions of $2,000,000 from FLP I and FLP II, as described in Exhibit A to the March 14, 2011 Arbitration Award, were approved by the EDB Trust. (App. 0294-97). Of the $2,000,000 to be transferred from FLP I and FLP II, the SLB Trust and Cooper would only have controlled $250,000 of the $2,000,000. (App. 0294-97). The rest of the distributions from FLP I and FLP II were to be made to Brown Bear LLC, which is controlled by Brown and Brown-Thills' individual trusts, and the EDB Trust, which was controlled jointly by Brown and Brown-Thill as successor co-trustees at the time. (App. 0294-97).

## C. There Is No Evidence of Any Extensive, Improper Ex Parte Contacts With Arbitrator McLeod.

The only evidence of Arbitrator McLeod's "alleged improper ex parte contact" that Brown submitted is a single itemized legal bill from Friend Cooper LLC showing that Arbitrator McLeod and Cooper had communicated on three occasions between February 14 and 16, 2011. (Add. 0025). Moreover, there was no

11

evidence presented that showed any ex parte conduct occurred in connection with the arbitration at issue. (Add. 0025).

Furthermore, the documents that Brown has cited to in his statement of facts demonstrate that Arbitrator McLeod welcomed and encouraged ex parte communications from both parties in his role as a mediator, that he took the necessary precautions to be impartial in his role as arbitrator, and that Brown himself had participated in ex parte communications with Arbitrator McLeod on several occasions. (Add. 0024; App. 0653).

Appellate Case: 13-1708    Page: 21    Date Filed: 09/03/2013 Entry ID: 4071272

# SUMMARY OF THE ARGUMENT

The district court did not err in granting Brown-Thill's Motion to Confirm the March 14, 2011 Arbitration Award. The district court correctly concluded that confirmation of the Arbitration Award was warranted because the issue regarding the Trust Funding Proposal that Brown-Thill submitted for resolution through arbitration was a properly submitted arbitral issue pursuant to the parties' Arbitration Agreement. Furthermore, in resolving such disputes between Brown and Brown-Thill, Arbitrator McLeod did not exceed his powers by failing to adhere to any prerequisites to arbitration by means of conducting the hearing in accordance with the Arbitration Agreement, and therefore did not engage in any misconduct or misbehavior in failing to post-pone the hearing or deny Brown of a fair hearing.

As the evidence proves, Brown was put on reasonable and proper notice of the arbitral issue regarding the Trust Funding Proposal over two weeks before the hearing took place. (App. 0186, ¶¶6-8; 1126, ¶¶5-7; 1127, ¶¶10). Brown-Thill followed the necessary provisions for putting Brown and his counsel on notice of the arbitral issue and Arbitrator McLeod followed the necessary protocol in determining a resolution. Since March 3, 2010, issues surrounding the funding of certain Brown family trusts through disbursements from FLP I and FLP II were the direct subject of arbitration before Arbitrator McLeod on several occasions. Thus,

13

Arbitrator McLeod's knowledge of the dispute between Brown and Brown-Thill as acting successor co-trustees of the EDB Trust, and his receipt of information surrounding the appraisals and the Trust Funding Proposal, put Arbitrator McLeod in the ideal position to hear the parties' positions and resolve the dispute between Brown and Brown-Thill. Indeed, because of the ongoing and numerous disputes between Brown and Brown-Thill regarding common and essential decisions regarding the administration of the EDB Trust, Arbitrator McLeod routinely participated in FLP I and FLP II partnership meetings, and after hearing both parties' arguments and receiving any evidence or concerns, Arbitrator McLeod routinely rendered his decision in the form of an arbitration award.

In addition, the partnership meeting and hearing scheduled for March 10, 2011, was never continued or otherwise limited in nature. Neither Cooper, Brown-Thill, nor Arbitrator McLeod ever agreed to postpone the substantive portion of the partnership meeting. (App. 0085-86, ¶8; 1126-27, ¶¶8-9). The Trust Funding Proposal, specifically the EDB Trust's position regarding the Trust Funding Proposal, was the only issue set for a determination at the partnership meeting, and there was no other business to be taken up at the meeting. (App. 0270). Under the applicable law, courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for not postponing the hearing exists. Thus, as the district court concluded, given the adequate notice, an opportunity to reschedule,

14

and Brown's failure to explain how the meeting was actually a conflict, Arbitrator McLeod's refusal to postpone the hearing was in every respect reasonable. (Add. 0017).

Moreover, Brown and his counsel were given ample opportunity before, during and after the partnership meeting and hearing to provide Arbitrator McLeod with any evidence that supported Brown's opposition to the disbursements outlined in the Trust Funding Proposal. (App. 0270; 0186, ¶¶6-8; 1126, ¶¶5-7; 1127, ¶¶10). Because such evidence demonstrates that Arbitrator McLeod construed the contract and acted within the scope of his authority by making the Arbitration Award only after hearing the evidence regarding the administration of the EDB Trust, which falls directly within the purview of the Arbitration Agreement, and the proper procedures delineated in the Arbitration Agreement were followed, confirmation of the March 14, 2011 Arbitration Award was proper.

The only err committed by the district court was its failure to award Brown-Thill all of her costs, losses, and attorneys' fees incurred in responding to Brown's Motion to Vacate, in direct contradiction to the clear and unambiguous terms of the Arbitration Agreement. As set forth in the Arbitration Agreement, Brown and Brown-Thill were to submit their disputes as co-trustees, co-beneficiaries, or partners to the agreed-upon arbitrator and once an arbitration award was entered, it was agreed that such arbitration award was to be confirmed

15

by a court of competent jurisdiction. Moreover, if either party was to pursue any claim, dispute or controversy outside of the provided for arbitration proceedings, the responding party has a right to recovery their costs, losses, and attorneys' fees. Brown pursued his identical claims against Brown-Thill at the district court level in direct contradiction of the expressed terms of the Arbitration Agreement and thus, Brown-Thill should be able to recover his costs, losses and attorneys' fees incurred in responding to such claims.

Therefore, Brown-Thill requests that the Court affirm the district court's confirmation of the March 14, 2011 Arbitration Award, but reverse the district court's order to the extent that it denied Brown-Thill's request to recover her attorneys' fees and costs and remand the matter back to the district court for the limited purpose of determining the amount of such costs, losses and attorneys' fees to be awarded to Brown-Thill.

Appellate Case: 13-1708    Page: 25    Date Filed: 09/03/2013 Entry ID: 4071272

# ARGUMENT

## I. Standard of Appellate Review Regarding Brown's Cross Appeal.

In reviewing a district court's order confirming an arbitration award, this Court must review questions of law *de novo*, but this Court will accept the district court's factual findings unless those findings are clearly erroneous. *McGrann v. First Albany Corp.*, 424 F.3d 743, 748 (8th Cir. 2005). Moreover, although this Court must review *de novo* the district court's legal conclusions, this Court provides "an extraordinary level of deference" to the underlying arbitration award. *Id*. As articulated by this Court in *McGrann*:

> [C]ourts have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests on factual errors or on a misinterpretation of the underlying contract.

*Id*.

## II. The Arbitration Agreement Unambiguously Provides That Attorneys' Fees Will Be Awarded To The Responding Party In Any Claim, Dispute or Controversy Pursued By Either Party Outside of The Provided-For Arbitration Proceedings.

Pursuant to the unambiguous, clear language of Paragraph E of the Arbitration Agreement, Brown-Thill, as the responding party to Brown's claims that were pursued outside the provided-for arbitration, has the right to recover all of her costs, losses and attorneys' fees in responding to Brown's Application to Vacate. (Add.0030, ¶E; App. 0292, ¶E).

17

Brown and Brown-Thill entered into an all-inclusive Arbitration Award that was drafted with the assistance of both Brown and Brown-Thill's counsel, which provided that, if either Brown or Brown-Thill:

> [p]ursues any claim, dispute or controversy against the other in a proceeding other than arbitration provided herein, the responding party shall be entitled to dismissal or injunctive relief regarding such action and recovery of all costs, losses, and attorneys' fees relating to such action.

(Add.030, ¶E; App. 0292, ¶E). Cleary, the parties contemplated and intended that the arbitration process would provide for expedited and efficient proceedings to resolve Brown and Brown-Thill's various disputes, all without the parties and the Brown family estate being forced to participate in protracted and costly litigation.

Brown's Application to Vacate the March 14, 2011 Arbitration Award and his efforts to re-litigate every single issue in dispute between Brown and Brown-Thill have resulted in anything but an expedited and efficient alternative to litigation. Rather, Brown's efforts to vacate the various arbitration awards entered into by the agreed-up arbitrator has resulted in ongoing and costly litigation between Brown and Brown-Thill since 2010.

Ordinarily, Missouri courts determine an award of attorneys' fees consistent with the "American Rule" which generally requires both parties to bear their own attorneys' fees. However, one clearly recognized exception to the American Rule is when there is an agreement in the parties' written contract that

18

specifically permits an award of attorneys' fees. *Supp. Med. Servs. v. Medi Plex Health Care*, 293 S.W.3d 128, 132 (Mo. App. 2009) (citing *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 657 (Mo. banc 2009)). Although the trial court is usually granted broad discretion in awarding a request for attorneys' fees, the court has no discretion in complying with the terms of an attorneys' fee agreement made in a contract and must comply when parties to an agreement have expressly contracted for awards for attorneys' fees. *Supp. Med. Servs.*, 293 S.W.3d at 132. The court must comply with that contract and award the fees.

Clearly, both parties agree that under Missouri law, where the contract is unambiguous, the court must adhere to the terms of the contract. *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. banc 2005). A contract is ambiguous only if its terms are susceptible to fair and honest differences. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). The attorneys' fee provision contained within the parties' Arbitration Agreement is unambiguously clear:

> [I]f either party pursues *any claim, dispute or controversy against the other in a proceeding other than the arbitration provided herein*, the responding party [Brown-Thill] shall be entitled to … recovery of all [her] costs, losses and attorneys' fees relating to such action.

(Add. 030, ¶E) (emphasis added). The language of the Arbitration Agreement is plain–Brown-Thill is entitled to recover all her costs, losses and attorneys' fees in responding to Brown's protracted Application to Vacate, in which Brown sought to

19

re-litigate nearly every single dispute between Brown and Brown-Thill that had already been presented for arbitration to the agreed-upon arbitrator. As the evidence proves, Brown simply used his Application to Vacate as an additional venue for him to re-litigate the arbitral issues and challenge every single aspect of the arbitration process, a process in which he voluntarily agreed to be bound.

## A. There Is Only One Logical Interpretation of the Relevant Attorneys' Fees Provision of the Parties' Arbitration Agreement.

When construing arbitration agreements and adhering to the general principles of contract interpretation, the terms are first read as a whole to determine the ordinary meaning. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859-61 (Mo. banc 2006) (citing *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995)). There is no room for interpretation unless the language allows for fair and honest differences, not because the parties disagree as to the contract's construction. *Id*. Generally, as in this case, parties agree to arbitration in order to avoid costly and drawn-out litigation. When Brown and Brown-Thill agreed to arbitrate their disputes, that is exactly what they each bargained for and exactly what each intended, to resolve any and all disputes or controversies through arbitration. Additionally, once an arbitration award was rendered, pursuant to the terms of the Arbitration Agreement, the prevailing party would use that arbitration award as a joint instruction and/or authorization of Brown or Brown-Thill, and that

20

the arbitration award would be confirmed through a judgment in accordance with the applicable law in a court of competent jurisdiction. (Add. 0029, ¶C).

However, contrary to the specific provisions of the Arbitration Agreement, Brown continuously objected to any third-party reliance on the arbitration awards entered by the parties' agreed-upon arbitrator and, as evidenced in this case and the other related appeal pending before this Court, attempted to re-litigate every single claim or dispute that had been properly submitted for arbitration. Such re-litigation following an arbitration award had been rendered was clearly not intended by the parties when they entered into the broad and all-inclusive Arbitration Agreement.

Contrary to Brown's assertion that Paragraph E of the Arbitration Agreement unambiguously provides no basis for Brown-Thill's request to recover her costs, losses and attorneys' fees, the language of Paragraph E could not be any clearer. The first sentence of Paragraph E states that:

> [T]he provisions of this agreement shall be a complete bar and defense to any suit, action or proceeding instituted in any court or before any administrative tribunal with respect to any dispute or controversy arising out of or in connection with this agreement...

(Add. 030, ¶E). Reading Paragraph E in conjunction with Paragraph C, the Arbitration Agreement does not limit Brown-Thill's right to recover her attorneys' fees incurred in responding to various claims Brown reasserted in his Application to Vacate as well as this appeal. (Add. 029-030, ¶¶C, E).

Appellate Case: 13-1708    Page: 30    Date Filed: 09/03/2013 Entry ID: 4071272

Under the applicable law, each term of a contract is construed to avoid rendering the specific terms meaningless. *Dunn Indus. Grp., Inc.*, 112 S.W.3d at 428. However, nothing in Paragraph E of the Arbitration Agreement refers to any other paragraph of the Arbitration Agreement, nor is there any limitation on the recovery of attorneys' fees set forth in the Arbitration Agreement regarding either parties' application to vacate an award. In reality, the language of the first sentence of Paragraph E further supplements, supports, and confirms Brown and Brown-Thill's mutual intentions and agreement that there would be no litigation in court or other litigious proceedings moving forward, outside of the agreed-upon arbitration proceedings, and the subsequent confirmation of the arbitration awards. Thus, denying Brown-Thill her right to recover her attorneys' fees would render the plain language of Paragraph E of the Arbitration Agreement completely meaningless and would go against the clear intent of the parties when they entered into the Arbitration Agreement.

As contemplated within the Arbitration Agreement, Brown-Thill is not seeking reimbursement for her attorneys' fees in seeking a judgment to confirm the March 14, 2011 Arbitration Award; such court action is specifically provided for in the Arbitration Agreement. (App. 0066-61, ¶¶1-2). Rather, Brown-Thill is seeking to recover attorneys' fees that she was forced to incur in responding to Brown's protracted Application to Vacate the March 14, 2011 Arbitration Award, a court

22

action that was completely outside the agreed-upon arbitration proceedings provided for in the Arbitration Agreement. Thus, Brown-Thill, as the responding party, should be awarded her attorneys' fees. (Add. 0029, ¶E).

Nothing in Paragraph C of the Arbitration Agreement references the parties' right to challenge an arbitration award, nor precludes the responding party from recovering his or her attorneys' fees and costs as a result of an application to vacate an arbitration award. (*See generally* Add. 0029-31). On the contrary, the parties intended that the arbitration awards issued by the agreed-upon arbitrator would be confirmed in a court of competent jurisdiction, and that third parties would rely on the finality of such awards. (Add. 0029, ¶C). The Arbitration Agreement was specifically designed to allow for the final and binding decision, obtained through arbitration, to be quickly and efficiently confirmed in a court of competent jurisdiction without the need to re-litigate the same arbitral disputes. When the Arbitration Agreement is read as a whole and all the provisions are read in harmony with one another, there is no other conclusion. Brown-Thill must be awarded her costs, losses and attorneys' fees in responding to the claims, disputes and controversies that Brown pursued outside of the arbitration process.

23

**B.    The FAA Does Not Prevent Parties From Contracting for or Entering Into Agreements That Include An Attorneys' Fees Provision, Even Regarding a Confirmation of an Arbitration Award.**

There are no provisions or sections of the Federal Arbitration Act ("FAA") that would prevent parties from agreeing to pay the prevailing parties' attorneys' fees in an award confirmation proceeding, especially when the parties' contract provides for them. (*See generally* the Federal Arbitration Act, 9 U.S.C. §§ 1-16). The FAA does not preclude parties from negotiating for an attorneys' fees provision in arbitration awards; rather, the FAA actually respects the parties' right to negotiate the terms of the arbitration agreement, including which disputes are to be governed by arbitration, potential damages, and their right to select an expedited method for dispute resolution instead of the much longer judicial processes. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Thus, since the FAA does not explicitly prohibit a contract containing provisions shifting attorneys' fees, and because the parties had actually contracted for them in their Arbitration Agreement, the Court should give deference to the unambiguous language within the Arbitration Agreement including the parties desire to allow the responding party to recover his or her attorneys' fees.

Further, under the FAA, an arbitration award may include attorneys' fees if the agreement to arbitration provides for such an award. *Ceco Concrete Const., a Div. of Robertson-Ceco Corp. v. J.T. Schrimsher Const. Co., Inc*., 792 F. Supp.

24

109, 111 (N.D. Ga. 1992) (citing *Ierna v. Arthur Murray Int'l, Inc., et al.,* 833 F.2d 1477, 1476 (11th Cir. 1987)). When federal or state courts deal with most disputes they must comply with the American Rule in that there will be no attorneys' fees awards for the prevailing party; however attorneys' fees awards are proper when provided for by statute, or when the parties have contracted in a manner authorizing such awards. *Menke v. Monchecourt*, 17 F.3d 1007, 1008-12 (7th Cir. 1994). Accordingly, the district court erred in denying Brown-Thill's right to recover attorneys' fees incurred by responding to Brown's protracted Application to Vacate, in which Brown sought to litigate his claims, disputes and controversies outside the arbitration process.

Each of the decisions referenced and cited in Brown-Thill's Opening Brief on Appeal confirm Brown-Thill's position that Missouri courts have consistently interpreted agreements and attorneys' fee provisions similar to the attorneys' fee provision contained within the Arbitration Agreement between Brown and Brown-Thill in accordance with the agreed-upon language utilized by the parties. Further, Missouri courts have consistently refused to impose additional conditions, limitations, or requirements on a party seeking recovery of his or her attorneys' fees when it would deviate from the express terms of the parties' written agreement. Thus, because Brown has pursued his claims, disputes and controversies against Brown-Thill through litigation outside of the agreed-upon

25

arbitration process, in both the district court and in this appeal now before this Court, which falls squarely under the purview of the Arbitration Agreement, Brown-Thill is entitled to recover all of her costs, losses and attorneys' fees she has incurred in responding.

### III. The Prerequisites to Arbitration Were Adequately Followed and Thus, Arbitrator McLeod Did Not Exceed His Powers.

Pursuant to the FAA, 9 U.S.C. § 10(a), there are only four extreme circumstances in which the court can grant a party's motion to vacate an arbitration award:

> (1) where the award is procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter  was not made.

9 U.S.C. § 10(a) (2002). In accordance with the FAA, this Court has recently confirmed that an arbitral award may only be vacated for the limited reasons enumerated in the FAA. *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008). Thus, a court's review of an arbitration award is extremely narrow and "[t]he court's sole function is to decide whether the arbitrator's decision draws its essence from the contract." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). For these reasons, the district court is to provide the arbitrator's decisions

26

"an extraordinary level of deference" and confirm the award "so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Crawford Group, Inc.*, 543 F.3d at 976; *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (courts should "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances").

> [A]lthough this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties … can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner.

*Stark v. Sanberg, Phoenix, von Gontard, P.C.*, 381 F.3d 793, 803 (8th Cir. 2004) (citing *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 751 (8th Cir. 1986)). Arbitration is designed primarily as an alternative to complex, time-consuming and costly litigation before the Arbitrator of the parties choosing. *Id.*

As the admissible evidence in the record proves, Brown's meritless arguments attacking both Arbitrator McLeod and his arbitration procedures and Brown's challenge of the March 14, 2011 Arbitration Award based on issues of procedural misconduct fail because Brown was provided with proper notice. Arbitrator McLeod conducted a hearing consistent with the powers granted to him by the parties' Arbitration Agreement, and the district court's Order confirming the March 14, 2011 Arbitration Award was therefore appropriate.

27

**A.** **Questions Regarding Arbitration Procedure Should Be Decided By The Arbitrators Not The Courts.**

Issues as to whether a party has allegedly failed to satisfy the notice requirements provided in the arbitration agreement is one of procedural arbitrability. *Auto. Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509, 514 (8th Cir. 1983). It has been established by this Court that questions of procedural arbitrability are to be decided by arbitrators and not by the courts. *ProTech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004).

**B.** **Arbitrator McLeod Properly Determined That the Dispute Between Brown and Brown-Thill Had Been Properly Submitted To Him and That the Procedural Requirements For Arbitration Had Been Satisfied.**

The issue in dispute between Brown and Brown-Thill as successor co-trustee regarding how the EDB Trust should vote regarding the Trust Funding Proposal in order to pay estate taxes and expenses is a dispute that falls directly within the purview of the all inclusive arbitration agreement. (Add. 0012-14; 0029, Introductory Paragraph). Moreover, as the evidence has established, and the district court confirmed, Brown-Thill complied with the procedures and prerequisites of the Arbitration Agreement in providing Brown with the notice of the dispute and a possible resolution, and Arbitrator McLeod determined that each of the procedures and prerequisites for arbitration had been complied with. (App. 0003-4; 0014).

28

One compelling reason parties select arbitration for dispute resolution is because it allows a more informal approach.

> By agreeing to arbitrate a statutory claim, a party…trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627 (1985) (internal citation omitted). Agreeing to arbitration would be far less favorable or expeditious if it required the same formalities and subscribed to the same inflexibility as a court. This concept is upheld in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (internal citations omitted) where the U.S. Supreme Court has distinguished arbitration from litigation by confirming that arbitrators are not bound by the rules of evidence, which further demonstrates the informality and flexibility in which arbitrators may direct their proceedings. *Id*. The Supreme Court went further to describe arbitration as a process with:

> [L]imited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.

*Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 588 (2008) (internal citation omitted) (citing *Kyocera Corp. v. Prudential-Bache Trade Serv., Inc.,* 341 F.3d 987, 998 (9th Cir. 2003). In conclusion, the FAA's goal was to promote expeditious resolution with immediate enforcement. *Id*. That is in fact what Brown

29

and Brown-Thill bargained for; expedited resolution of their disagreements through the arbitration process.

The Eighth Circuit has repeatedly upheld the discretion of the arbitrator for procedural matters such as "prerequisites such as time limits, notice … and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrator to decide." *Pro Tech Indus.* 377 F.3d at 871-872 (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 85 (2002)). In Pro Tech, this Court concluded that questions such as whether waiver occurred, whether demand to arbitration was sufficient and timely or other issues of procedural arbitrability are all for the arbitrator to decide and not for the judge. *Id.* (citing *Int'l. Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Local 493 v. EFCO Corp*., 359 F.3d 954, 957 (8th Cir. 2004) (noting "the question of whether the procedural prerequisites have been complied with or . . . waived . . . is a matter for the arbitrator and not for the court"); *see also Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382, 386 (8th Cir. 1983) (ruling the court would not entertain an objection that opposing party failed to deliver an arbitration demand within time limit); *Auto. Petro. & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509, 514 (8th Cir. 1983) (stating "the issue of whether the Union's alleged failure to satisfy the notice requirement barred arbitration is one of procedural arbitrability," and "is reserved for the arbitrator,

30

and not the district court")). This Court went further to declare that arbitrators are the experts about the meaning of their own rules and processes and are better able to interpret them than courts would be. *Pro Tech Indus.,* 377 F.3d at 871-72. When the parties have not contracted otherwise to require procedural specificities the court can infer that the parties did not intend to require such specificity. *Id.* (citing *Howsam,* 537 U.S. at 85 ("for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy-a goal of arbitration systems and judicial systems alike")).

> It is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement. Thus, we have said that 'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010).

First and foremost, without coercion, Brown and Brown-Thill entered into the Arbitration Agreement and voluntarily agreed that:

> [A]ll existing and future disputes and controversies between the parties, whether in their capacities as "co-beneficiaries and/or co-trustees of the [EDB] Trust and the [SLB] Trust (and/or any sub-trusts created hereunder), or in their capacities as co-owners, partners, or members of any business entity… which arise out of or relate to the *administration and investment of the trusts, partnerships, and assets…*

31

of the Eugene and Saurine Brown estates including, "*the payment of estate taxes of such estates*" shall be submitted to binding arbitration. (Add.0029, Introductory Paragraph) (emphasis added). Thus, the dispute between Brown and Brown-Thill regarding the transfer of funds from the family limited partnerships, FLP I and FLP II, which are specifically identified in the Arbitration Agreement, in order to pay estate taxes and other expenses as also articulated in the Arbitration Agreement, fits squarely in the purview and essence of the Arbitration Agreement, and was completely within the parties' intentions and expectations. (*See generally* Add. 0029-30). Any argument by Brown stating otherwise is contrary to the terms of the Arbitration Agreement and is completely without merit. Moreover, any implications by Brown that he was coerced or did not consent to or agree to have Arbitrator McLeod as the parties' agreed-upon arbitrator, fail as well. (Add. 0031).

Secondly, contrary to Brown's unsupported contentions, the dispute between Brown and Brown-Thill regarding the position to be taken by the EDB Trust as to the proposed distributions from FLP I and FLP II to cover estate taxes and other expenses had been an ongoing issue of dispute between the same for a very long time. (App. 0065, ¶9). For more than 12 months, Brown and Brown-Thill had both been frequently supplied with information regarding the potential estate taxes to be paid, expenses that were outstanding and the financial documents needed to make decisions regarding the proposed distributions from FLP I and FLP

32

II, and Arbitrator McLeod was acutely aware of this issue. (App. 0065, ¶9; 0084, ¶¶3-5). Thus, because of the ongoing disputes between Brown and Brown-Thill, which had necessitated numerous discussions amongst the parties in the presence of Arbitrator McLeod and previous arbitration awards, Brown had more than adequate notice to have investigated and prepared his arguments and should have obtained and presented any evidence supporting his position and any objections he had to the EDB Trust supporting the Trust Funding Proposal. (App. 0068, ¶¶14-15; 0084-85, ¶¶5-6; 1125-1128).

Finally, as the district court determined, Brown was also put on reasonable and proper notice of the arbitral issue according to the procedures outlined within the Arbitration Agreement. (Add. 0014, n.7). Brown-Thill followed the necessary provisions for putting Brown and his counsel on notice of the arbitral issue and the arbitrator followed the necessary protocol in determining a resolution. (App.0067, ¶11; 0085-86, ¶8). Since March 3, 2010, issues surrounding the funding of certain Brown family trusts through disbursements from FLP I and FLP II have been the direct subject of arbitration before Arbitrator McLeod. (App. 0065-66, ¶9). Therefore, Brown's receipt of the Trust Funding Proposal after Arbitrator McLeod's arbitration order and award was issued on February 22, 2011, should have been anything but a surprise to Brown and his counsel, Mr. Laner, who had represented him throughout the arbitration process. Furthermore, in contrast with

33

Brown's unsubstantiated argument that he had never received any documentation necessary to make determinations regarding the EDB and SLB Trusts, Brown and Brown-Thill both received quarterly financials from JMW & Associates that include all the assets and expenses for the entire Brown family estate, both received annual estate and income tax returns, both had the ability to monitor a substantial amount of the invested assets through web-based access, and both had consistently been provided with the information and documentation needed to make informed decisions regarding the EDB and SLB Trusts. (App. 1122-23, ¶¶3-5). For these reasons, Brown and Brown-Thill had substantial information, documentation, and time to make a determination regarding the EDB and SLB Trusts' cash flow issues, which is the underlying determination contained in the Arbitration Award. (App. 1123, ¶5).

Furthermore, because of the numerous ongoing disputes between Brown and Brown-Thill regarding ordinary and basic decisions regarding the administration of the EDB Trust, Arbitrator McLeod routinely participated in FLP I and FLP II partnership meetings, and after hearing both of the parties' arguments, evidence, and concerns, he routinely rendered his decision in the form of an arbitration award. For example, just a month before, having heard and considered the positions taken by both Brown and Brown-Thill in the February 17, 2011 meeting and conference call, Arbitrator McLeod entered an arbitration award and

34

order determining that Reuben Paulson and Friend Cooper, LLC were to be retained to appraise the assets of FLP I as of June 4, 2010. (App. 0137). Thus, with an estate income tax deadline fast approaching on April 15, 2011, on February 22, 2011, Cooper circulated the Trust Funding Proposal to Brown and Brown-Thill. (App. 0066, ¶10). On February 22, 2011, the Trust Funding Proposal was also provided to Laner, Brown's longtime arbitration and litigation counsel, who had been responsible for representing Brown in the various arbitration proceedings between Brown and Brown-Thill, and on February 25, 2011 Laner was advised that if Brown was not in agreement with the Trust Funding Proposal, there was an arbitral issue that would be submitted to Arbitrator McLeod for a resolution; thus, Brown's argument that he did not receive seven days of notice and no opportunity to mediate is completely unfounded. (App. 0066-67, ¶¶10-11; *See* Brown Resp. pp. 10-11). The email from Brown-Thill's counsel was more than adequate to put Brown's counsel on notice that there was an arbitral dispute between Brown and Brown-Thill, as successor co-trustees of the EDB Trust, which was going to be determined by Arbitrator McLeod should Brown and Brown-Thill not be able to come to a resolution within seven days. (App. 0140-42).

Considering the FAA's policies and requirements, none of the evidence in the record supports Brown's allegations that Arbitrator McLeod exceeded his authority. As in this case, often parties select arbitrators that become familiar with

Appellate Case: 13-1708    Page: 44    Date Filed: 09/03/2013 Entry ID: 4071272

their situation or business. Here, Arbitrator McLeod was very familiar with the parties, the disputes, and knew the history of their disputes. Additionally, had there been procedural problems brought to the arbitrator, Arbitrator McLeod was in the position to have remedied them. In short, Brown's failure to bring these issues up regarding earlier mediations, arbitrations and procedures previously utilized by the parties significantly undermines Brown's contentions in this appeal.

## C. Arbitrator McLeod Operated Within the Terms of the Arbitration Agreement, Thus There is No Evidence of Any "Manifest Disregard" of The Terms of The Parties' Agreement.

Brown's argument that the March 14, 2011 Arbitration Award should be vacated under 9 U.S.C. § 10(a) because Arbitrator McLeod exceeded his powers by manifestly disregarding the terms of the parties' Arbitration Agreement also fails because the March 14, 2011 Arbitration Award is clearly within the scope of the agreed-upon terms of the Arbitration Agreement. Moreover, Brown's reliance on numerous opinions from the United States Supreme Court regarding the manifest disregard standard is entirely misplaced.

First, the Supreme Court's decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013), has absolutely no applicability to the facts at issue in this case, but incidentally supports Brown-Thill's arguments that confirmation of the March 14, 2011 Arbitration Award is appropriate. Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *Id*. at 2068.

36

That limited judicial review "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Id*. (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 588 (2008). If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. *Id*. Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. *Id*. Brown has failed to provide any evidence that Arbitrator McLeod entered the Arbitration Award which simply reflects Arbitrator McLeod's own form of justice rather that drawing his authority from the terms of the Arbitration Agreement. To the contrary, the immense amount of evidence provided by both parties actually proves that Arbitrator McLeod conducted himself with the powers enumerated to him by Brown and Brown-Thill through the Arbitration Agreement, and therefore confirmation of the March 14, 2011 Arbitration Award was appropriate.

In *Oxford*, the Supreme Court further confirmed that § 10(a)(4) only allows the court to vacate an arbitral decision when the arbitrator strayed from his

Appellate Case: 13-1708    Page: 46    Date Filed: 09/03/2013 Entry ID: 4071272

delegated tasks of interpreting the contract. *Id*. Brown has failed to present any evidence that Arbitrator McLeod failed to construe the parties' contract. *Id*. Indeed, the Supreme Court emphasized that convincing a court of an arbitrator's error— even his grave error—is not enough, so long as the arbitrator was "arguably construing" the contract—which this one was—a court may not correct his mistakes under § 10(a)(4). *Id* at 2070. As recapped by the Supreme Court, Brown and Brown-Thill chose arbitration and that choice must be upheld. *Id*.

Additionally, in *Stolt-Nielson*, on which Brown also relies, the district court vacated a commercial arbitration award which imposed class arbitration on parties whose arbitration clauses were silent regarding class arbitration after hearing evidence and testimony from the petitioners. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010). Recognizing there was not case law directly on point regarding class arbitration, where the contract is silent regarding imposing class arbitration, the arbitrators stayed the proceeding allowing the parties to seek judicial review and petitioners filed an application to vacate the arbitrators' award in the District Court for the Southern District of New York. *Id*. The district court vacated the award, concluding that the arbitrators' decision was made in "manifest disregard" of the law insofar as the arbitrators failed to conduct a choice-of-law analysis. *Id*. After the Second Circuit Court of Appeals reversed the district court's decision, the Supreme Court concluded that rather than inquiring whether the FAA,

maritime law, or New York law contains a "default rule" under which an arbitration clause is construed as allowing class arbitration in the absence of express consent, the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation. *Id.* at 1768-69. The Supreme Court concluded that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so. *Id.* at 1775. Nothing about the Supreme Court analysis or the *Stolt-Nielsen* decision is persuasive that Arbitrator McLeod enforced the Arbitration Agreement contrary to its contractual terms and the expectations of the parties because Brown expressly agreed to the arbitrate in the Arbitration Agreement. Brown's reliance on other cases discussing the manifest disregard for the agreement standard is also misplaced for similar reasons.

Thus, as there is no evidence of Arbitrator McLeod's manifest disregard for the parties' agreement as argued by Brown in his Response Point II Sections F-G, pp. 51-55.

### D. Brown's Argument That Arbitrator McLeod Failed to Comply With The Terms of the Arbitration Agreement Is Also Without Merit.

Brown next argues that Arbitrator McLeod failed to require strict compliance with the Arbitration Agreement, requiring the parties to mediate the issue with Arbitrator McLeod before the arbitration hearing was held and the

Appellate Case: 13-1708     Page: 48     Date Filed: 09/03/2013 Entry ID: 4071272

March 14, 2011 Arbitration Award was entered, and therefore Arbitrator McLeod exceeded his powers in hearing the parties dispute in his role as the agreed upon arbitrator. Brown's argument fails to recognize Brown-Thill's ongoing efforts to communicate with Brown, through his counsel, regarding the issue in dispute and Arbitrator McLeod's history in dealing with Brown and Brown-Thill for over a year in March of 2011. Furthermore, the issue as to whether all the prerequisites to arbitration have been met goes to the procedural arbitribility, which is for the arbitrator to decide, not the court, as discussed *supra*.

Moreover, Brown has completely undermined the flexibility that Brown agreed to when he decided on arbitration instead of full-blown litigation of each issue in dispute between Brown and Brown-Thill. As numerous courts have recognized, arbitrators must have a great deal of flexibility in fashioning remedies if the national policy favoring the settlement of disputes through mediation is to have any real substance or meaning. *Swenson v. Bushman Inv. Properties, Ltd.*, 870 F. Supp. 2d 1049, 1065 (D. Idaho 2012). *See generally Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Arbitrators must be "given flexibility in fashioning appropriate remedies not inconsistent with the terms of the contract or agreement being interpreted. *Carpenter Local No. 1027 v. Lee Lumber & Bldg. Material Corp.*, 1992 WL 253090 (N.D. Ill. 1992). As the district court correctly concluded, nothing about the procedures Arbitrator McLeod

40

required the parties to follow regarding notice, or the way in which Arbitrator McLeod fashioned his remedies in the March 11, 2011 Arbitration Award were inconsistent with the terms of the Arbitration Agreement or the parties' intentions. Thus, confirmation of the March 14, 2011 Arbitration Award was proper.

## IV.    Arbitrator McLeod Properly Adhered To The Contractual Rights and Expectations of The Parties That Is Required Under to the FAA.

Brown further claims that since Arbitrator McLeod failed to interpret the terms of the Arbitration Agreement correctly, the March 14, 2011 Arbitration Award cannot stand because it contravenes the parties clearly expressed intent. (App. 0371-74; 0383-87). This argument suggested by Brown, also fails.

This Court has established that a court cannot vacate the award simply because the district court may disagree with the arbitrator's interpretation, unless that interpretation so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it. *Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers*, 309 F.3d 1075, 1081 (8th Cir. 2002).

The dispute between Brown and Brown-Thill, in which Brown refused to provide any constructive response, was ultimately resolved by Arbitrator McLeod through his attendance and participation at the March 10, 2011 hearing. (App. 0179-80). None of the these facts diminish or undermine Arbitrator McLeod's interpretation of the parties' agreement, his rulings regarding the procedures to be followed regarding the hearing, or his representation that he would consider the

41

parties' arguments and evidence and listen to the issues and enter an award, which is entirely consistent with the Arbitration Agreement. (App. 1126-1127, ¶¶8-11). Finally, as the evidence proves, Brown-Thill's counsel requested and expected that Arbitrator McLeod would attend the hearing, and Arbitrator McLeod had informed both Brown and Brown-Thill that he had intended to listen to the issues, consider all evidence and make a timely ruling given the tax deadlines which were fast approaching. (App. 1126-1127, ¶¶8-11).

### A.   Nothing About The March 14, 2011 Arbitration Award Was Intended To or In Fact Amends or Modifies the EDB Trust Agreement or Disregards its Terms.

Brown's assertion that in resolving Brown and Brown-Thill's dispute regarding the position the EDB Trust should take as a member of Brown Bear LLC regarding the Trust Funding Proposal through an Arbitration Award that purports to modify or change the terms of the EDB Trust Agreement also fails for various reasons.

First and foremost, the Arbitration Agreement was entered into by Brown and Brown-Thill to further the terms of and intent of the EDB Trust, and to properly administer the EDB Trust. From 2009 through March 2010, Brown and Brown-Thill as successor co-trustees had experienced significant disagreements (Add. 0003; App.0085-87), which were causing the EDB Trust to stand idle, thus, both agreed to enter into a nonjudicial settlement agreement, which would allow

42

them to further the intent and purpose of the EDB Trust Agreement. (Add. 0003-4; 0029-31; App. 0084-86; 0294). Through this process, Brown and Brown-Thill were provided with information regarding expenses, assets and appraisals of certain assets directly related to their disagreement, yet Brown and Brown-Thill could not agree as to the position the EDB Trust should take. (Add. 0004-6). This is the exact sort of dispute that Brown and Brown-Thill agreed would be submitted to arbitration for resolution. (Add. 0003; 0029; App 0291). By entering into the Arbitration Agreement confirming that the EDB Trust supported the Trust Funding Proposal, neither Arbitrator McLeod nor the co-trustees attempt to modify the terms of the EDB Trust Agreement or terminate the EDB Trust Agreement. (*See generally*, Add. 0029-30). Through the Arbitration Agreement and the arbitration process the successor co-trustees were upholding their duties as trustees to act in good faith and in accordance with the purposes of the trust.

Second, contrary to Brown's circular arguments, pursuant to Mo. Rev. Stat. § 456.8-816, trustees are provided with the specific power to "resolve a dispute concerning the interpretation of the trust or its administration by mediation, arbitration, or other procedure for alternative dispute resolution." Specifically, paragraph (23) of Mo. Rev. Stat. § 456.8-816 authorizes trustees such as Brown and Brown-Thill to enter into and resolve administration disputes through mediation or arbitration. The drafters of the trust code encourage the use of such

Appellate Case: 13-1708     Page: 52     Date Filed: 09/03/2013 Entry ID: 4071272

alternative methods for resolving disputes and recognize arbitration as a nonjudicial settlement agreement specifically authorized by Section 111. (4A Mo. Prac., Probate and Surrogate Laws Manual § 456.8-816 (2d. ed.). While the code recognizes that a court may intervene in the administration of a trust to the extent its jurisdiction is invoked, *resolution of disputes by nonjudicial means is encouraged*. (4A Mo. Prac., Probate & Surrogate Laws Manual § 456.1-111 (2d. ed.) (emphasis added). This section of the trust code facilitates the making of such nonjudicial settlement agreement by giving them the same effect as if approved by the court. *Id*. Under this section, in an attempt to limit improper nonjudicial settlement agreements, the statute states that such agreements cannot be used to produce a result not authorized by law, such as terminating a trust in an impermissible manner. *Id*.

Nothing in the Arbitration Agreement or the March 14, 2011 Arbitration Award attempted to terminate the EDB Trust or produce a result not fully authorized by the law. Thus, none of the provisions within the EDB Trust that were cited by Brown support his position that the Arbitration Agreement was improper or not supported by the trust code adopted by Missouri. Thus, because the resolution of disputes is encouraged by the law and the courts and because Brown and Brown-Thill's Arbitration Agreement resulted in a dispute resolution that did not modify or terminate the EDB Trust as Brown asserts, Arbitrator McLeod's

44

March 14, 2011 Arbitration Award was proper and Arbitrator McLeod did not exceed his powers.

Because there has not been a modification or termination of the EDB Trust through the Arbitration Agreement or by the March 14, 2011 Arbitration Award, Brown's reliance on various Florida Statutes regarding nonjudicial modification of an irrevocable trust is similarly misplaced.

### B. The District Court Properly Determined That Arbitrator McLeod Did Not Exceed His Powers.

Brown's argument that Arbitrator McLeod in some way exceeded his powers by resolving an ongoing dispute between Brown and Brown-Thill in their capacities as successor co-trustees of the EDB Trust is erroneous. (*See* Brown Resp., Br. p. 63). Under both Florida and Missouri law arbitrators are provided with wide authority to interpret contracts and make determinations based on those interpretations. See *e.g., Tubbs v. Hudec,* 8 So.3d 1194, 1196 (Fla. Dist. Ct. App. 2009) (stating that an arbitrator's authority is construed liberally if the arbitration clause is sufficiently broad, and doubts concerning the scope of arbitration should generally be resolved in favor of arbitration)); *Local No. Int'l Bhd. of Elec. Workers, AFL-CIO v. Matejka Elec., Inc.,* 88-923C(1), 1989 WL 1633032 at *3 (E.D. Mo. 1989) (holding that a reviewing court must broadly construe an arbitration agreement in determining whether an arbitrator has exceeded his authority and resolve all doubts in favor of the arbitrator's award); *see also*

45

*Mitsubishi Motors Corp.,* 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). As is clearly articulated in Brown-Thill's Confirmation of the Arbitration Award, the parties decided to submit to arbitration their disputes because, as the evidence suggests, Brown was not able to make decisions that materially affected the proper administration of the EDB Trust and therefore the EDB Trust, Brown Bear LLC and the Brown family estate had been held hostage by Brown's inability to cooperate. (App. 0083, ¶2). There can be no disagreement that Brown and Brown-Thill intended for Arbitrator McLeod to resolve any disputes that arose between Brown and Brown-Thill as co-trustees.

In making decisions, Arbitrator McLeod utilized the EDB Trust Agreement so that proper management and administration of the EDB Trust would be the result. An arbitrator has the ability to settle legal as well as factual questions with little interference from the courts and "[i]t is not the function of the courts to determine if the arbitrator decided the grievance correctly, as long as the arbitrator, under the contract to arbitrate, acted within his jurisdiction." *Westridge Inv. Grp., L.P. v. McAtee*, 968 S.W.2d 243, 245-46 (Mo. App. 1998). There is no question that Arbitrator McLeod had jurisdiction over the dispute between Brown and Brown-Thill. Contrary to Brown's unsupported statements, Arbitrator McLeod was

Appellate Case: 13-1708    Page: 55    Date Filed: 09/03/2013 Entry ID: 4071272

selected as the agreed upon arbitrator, much like a court, to impose their decision-making authority when Brown and Brown-Thill could not.

### C. Brown and Brown-Thill as Co-Trustees, Contracted for Arbitrator McLeod To Resolve Their Disputes.

Brown's argument that a court cannot control a trustee's exercise of discretion, and therefore cannot substitute its own judgment for that of the trustee, fails because Brown and Brown-Thill voluntarily entered into an Arbitration Agreement, which provided that Arbitrator McLeod "shall act with full and complete binding authority to resolve any and all issues submitted to him for arbitration." (Add. 0003; 0031).

Moreover, not one case in which Brown relies supports his position that because Brown and Brown-Thill entered into an all-inclusive Arbitration Agreement to resolve their disputes that Arbitrator McLeod has improperly substituted his own judgment for that of Brown. For instance, in *In re Ziegler* the court restated that it does retain supervisory powers over the trust estate, and the court would retain its rights, unless an appropriate petition or other pleadings by an interested party, to review an alleged abuse, if any, of the discretion exercised by the trustees. The presumption is that the trustees will exercise this power in good faith and with sound discretion. *In re Ziegler's Trusts*, 157 So. 2d 549, 550 (Fla. Dist. Ct. App. 1963). Nothing in *In re Ziegler* suggests that a court has improperly imposed its judgment for Brown because it confirmed the Arbitration Award for

47

which Brown voluntarily agreed to be bound and for which he entered to further the goal of properly administering the EDB Trust.

Here, neither Brown nor Brown-Thill delegated their duties as co-trustees of the EDB Trust to one another. Alternatively, they both negotiated for and voluntarily entered into an Arbitration Agreement with the intentions that the agreed upon arbitrator would enter orders resolving their disputes, to assist them in properly performing their responsibilities and administering the EDB Trust. If Arbitrator McLeod would have agreed that Brown was acting within the bounds of reasonable judgment, Arbitrator McLeod could have required that the hearing be continued or that Brown be provided with additional documents. However, Arbitrator McLeod did not continue the hearing and found that the information provided was adequate to make a reasonable determination regarding the Trust Funding Proposal. Nothing about resolving Brown and Brown-Thill disputes resulted in Arbitrator McLeod exceeding his powers, and therefore confirmation of the March 14, 2011 Arbitration Award was proper.

**D.  Pursuant to Both the SLB Trust and The EDB Trust Agreements, Estate Taxes and Expenses Were To Be Paid By The Trustees.**

Both the EDB Trust and the SLB Trust provide that estate taxes are the paid upon the grantor and the grantor's spouse's death. Article I § C Payment of Debts, Taxes and Expenses of the EDB Trust provides:

48

(1) Upon the death of Grantor, to the extent that the Grantor's probate estate, exclusive of real property and tangible personable property, shall be insufficient to pay the Grantor's legally enforceable debts and last illness and funeral, estate administration expenses, and all pecuniary bequests under the Grantor's Last Will, the Trustee is authorized, in the sole and absolute discretion of the Trustee, to pay, to such extent, all such debts, expenses and bequests.

(2) Except as otherwise provided below, upon the death of the Grantor, the Trustee shall pay (a) any and all taxes owing by the Grantor at the Grantor's death, including but not limited to, federal or state income, gift or property taxes (including interest and penalties, if any), and (b) a proportionate part of all taxes lawfully imposed by reason of the Grantor's death, including federal estate taxes, state estate or inheritance taxes, federal, state or foreign country transfer or succession duties (including interest and penalties, if any)…

(App. 0494-95). Article II § A(3) Distributions Upon the Death of Grantor's Spouse of the EDB Trust provides that after a Marital Trust is created upon the Grantors Death, the Marital Trust shall be distributed as follows:

The Trustee shall, out of the trust estate, pay or provide for the payment of any additional federal estate tax, state inheritance or estate tax other death tax imposed on the estate of the Grantor's spouse by reason of inclusion of the value of this trust estate in this trust estate in the taxable estate of the Grantor's spouse…

(App. 0498). Moreover, the SLB Trust has similar if not identical provisions requiring the trustees to pay debts, taxes and expenses. (*See* App. 0545).

Arbitrator McLeod furthered the intent of the EDB Trust in determining that Brown agreed to the Trust Funding Proposal, and thus the EDB Trust could vote in favor of the Trust Funding Proposal. Furthermore, as in a court, Brown provided Arbitrator McLeod with the authority to hear Brown's arguments and

49

concerns and determine if in fact Brown was making reasonable requests and utilizing reasonable judgment when rejecting the Trust Funding Proposal. In reality, as with the other arbitration proceedings and Brown's refusal to abide by other arbitration awards, Brown has never agreed with anyone regarding any decision. As the evidence proves in the other pending appeal before this Court, Arbitrator McLeod ultimately determined that Brown was not fit to serve as a co-trustee. In agreeing to and signing the Arbitration Agreement, Brown understood that there would be times in which the arbitrator's judgment would be utilized over his in order to properly administer and accomplish the goals of the EDB Trust.

## V.    Arbitrator McLeod Did Not Exceed His Authority By Signing Documents in Brown's Stead In Order to Further Compliance With The Arbitration Awards.

Brown's argument that Arbitrator McLeod exceeded his authority by signing necessary documents in Brown's stead because Brown has repeatedly refused to comply with the terms of the Arbitration Agreement and therefore the Arbitration Award should be vacated is also without merit.

It is well settled that:

The award of arbitrators in statutory arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts: *if the award is within the scope of the submission, and the arbitrators are not guilty of the acts or misconduct set forth in the statute, the award operates as a final and conclusive judgment.*

50

*Schnurmacher Holdings, Inc. v. Noriega*, 542 So. 2d 1327, 1328 (Fla. 1989) (emphasis added) ("in absence of one of the five factors set forth in the statute, neither the trial court nor the district court of appeal has the authority to overturn the award"). Accordingly, even if signing the transaction documents were inappropriate conduct by the arbitrator, the conduct was post-award, and is conduct that is not barred by 9 U.S.C. § 10.

> Pursuant to paragraph C of the Arbitration Agreement:

> [T]he arbitrator's decision shall have the effect of a joint instruction and/or authorization from Richard Lotman Brown and Susan L. Brown-Thill and may be presented to such third-parties, such as trustees and partnerships.

(Add. 0029, ¶C). When entering into the Arbitration Agreement, Brown and Brown-Thill specifically agreed that a determination from Arbitrator McLeod would be binding on the parties and it was their intention that such determination would need to be binding so that third parties could effectively rely on the arbitration awards moving forward.

The task of an arbitrator is to interpret and *enforce* a contract. *Stolt-Nielsen*, 130 S. Ct. at 1767 (emphasis added). Because arbitrators derive their powers from the parties' agreement, courts look to the terms of the governing arbitration clause to determine the powers of the arbitrator. *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011); *See also Local No. Int'l Bhd. of Elec. Workers,* 1989 WL 1633032, at * 3 (holding that a reviewing

51

court must broadly construe an arbitration agreement in determining whether an arbitrator has exceeded his authority and resolve doubts in favor of the arbitrator's award). Here, the Arbitration Agreement specifically provides that third parties must rely on the Arbitrator's Award as if the Award was a joint instruction and/or authorization from Richard Lotman Brown and Susan L. Brown-Thill and that the arbitration award may be presented as such to third parties, such as trustees and partnerships. (Add. 0029, ¶C; App.0291, ¶C). Through the specific language contained in this provision, Brown and Brown-Thill provided the Arbitrator the power to enforce compliance with his awards. (Add. 0029, ¶C; App. 0291; ¶C). In fact, as with most of Brown's Response, the main case to which Brown cites in support of his argument that Arbitrator McLeod did not have the power to sign documents in Brown's stead actually supports Brown-Thill's position. (*See* Brown Resp., pp. 23-24). In *Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987), the court held that, because the parties' arbitration agreement contained no clause regarding the issue of compliance with the award, and the arbitrator's power derived from the parties' arbitration agreement, the arbitrator had no authority to rule on compliance with the award in that case. *Id.* at 376. In direct contrast, the Arbitration Agreement contains a specific clause describing the arbitration awards as a joint instruction from Brown and Brown-Thill, thus resolving any issues of compliance. As a result, utilizing the rule from *Ottley*, Arbitrator McLeod certainly had the power to

Appellate Case: 13-1708    Page: 61    Date Filed: 09/03/2013 Entry ID: 4071272

resolve Brown's issues of non-compliance by signing documents in Brown's stead when third parties required such instruction documents.

Thus, if Brown or Brown-Thill had failed to abide by the instructions as set forth in the Arbitration Award, such as signing documents effecting an asset disbursement, Arbitrator McLeod is authorized to resolve the issue by signing such documents in Brown's stead. Again, as stated at length *supra,* as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, his decision may not be vacated. Here, a simple reading of the Arbitration Agreement itself shows that, at the very least, Arbitrator McLeod is "arguably construing or applying" the Arbitration Agreement; thus vacatur is not warranted. (App. 0029, ¶C).

For these reasons, Arbitrator McLeod did not exceed his authority in entering into the March 14, 2011 Arbitration Award and therefore confirmation of the Arbitration Award was proper.

## VI.    Arbitrator McLeod Did Not Commit Any Procedural Misconduct By Refusing to Continue The March 10, 2011 Arbitration Hearing.

In order to constitute misconduct requiring vacation of an award, an error in the arbitrator's determination "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Grahams Serv. Inc. v. Teamsters Local 975,* 700 F.2d 420, 422 (8th Cir. 1982). As with each of the preceding arbitration award and orders Arbitrator

53

McLeod entered, for months Brown was provided with ample opportunity to present evidence with which to support his arguments. For months leading up to the partnership meeting, including the preceding arbitration award on February 22, 2011 related to the same subject matter Arbitrator McLeod entered authorizing the updated appraisals for some of the limited family partnerships' assets, Arbitrator McLeod received substantial information from both Brown and Brown's counsel. As discussed *supra*, Brown-Thill provided Brown with more than seven days notice of the hearing and dispute, in reality nearly two weeks, as required in the Arbitration Agreement. (App. 0270). Thus, Brown was certainly not deprived of a notice of the hearing, as he alleges.

Interestingly enough, in making his arguments regarding why he was denied a "fundamentally fair hearing," Brown relies on decisions from other circuits and not this Court. That might be because this Court does not recognize "fundamental unfairness" as a basis for vacating an arbitration award:

> We have **never** recognized 'fundamental unfairness' as a basis for vacating an arbitration award. Indeed, our narrow construction of extra-statutory review militates against such a standard. We have repeatedly said that an arbitration award may be challenged 'only' in the previously articulated instances [FAA statutory remedies: corruption, fraud, undue means, evident partiality, misconduct, or exceeding authority; or the two narrow, extra-statutory grounds of where an award is completely irrational or evidences a manifest disregard for the law].

*Hoffman v. Cargill Inc.,* 236 F.3d 458, 462 (8th Cir. 2001) (emphasis added). "Arbitration is not a perfect system of justice, nor [is it] designed to be." *Id.* If a "fundamental unfairness" standard exists, it must apply to arbitration schemes so deeply flawed as to preclude the possibility of a fair outcome. *Id.* at 463. An award is considered irrational only "where it fails to draw its essence from the [arbitration] agreement" and it manifests a complete disregard for the law when the arbitrator identifies the applicable rule of law but then completely ignores it. *Id.*

Furthermore, Arbitrator McLeod did not commit any procedural misconduct in refusing to continue the hearing set for March 10, 2011. First, as the district court recognized, neither Brown nor his counsel have ever presented any legitimate reasoning for the requested continuance of the arbitration hearing. (Add. 0003-4). Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists. *El Dorado Sch. Dist. v. Continental Cas. Co*., 247 F.3d 843, 848 (8th Cir. 2001). In *El Dorado*, the court found nothing in the record before it to indicate that the arbitrator was guilty of misconduct in denying the motion for a continuance. *Id*. Like *El Dorado*, Brown has failed to put forth any evidence of misconduct on the arbitrator's part, and Brown's failure to participate in the hearing was the result of his own decision not to attend the hearing. *Id*.

55

Finally, it should be noted that Brown's assertion that Arbitrator McLeod agreed to postpone the hearing but did not is completely unfounded. Brown is correct in that Mr. Ruzicka did have a phone conversation with Arbitrator McLeod, but Arbitrator McLeod specifically told Mr. Ruzicka he would *not* postpone the hearing. (App. 1126-27, ¶¶8-9). Furthermore, Arbitrator McLeod's denial of Brown and his counsel's numerous requests for a postponement of the meeting did not deprive Brown of a fair hearing.

> ### A. Brown Was Provided With An Adequate Opportunity Before, During and After the March 10, 2011 To Make His Arguments and Present His Evidence to The Arbitrator.

The arbitration setting does not force the same due process procedures required by the formal court system. *Stark*, 381 F.3d at 803.

> When parties have adopted arbitration, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.

*Grahams Serv. Inc.,* 700 F.2d at 423. In light of such informalities, "the FAA permits arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues" the arbitrator only needs to provide each party "*the opportunity* to present its arguments and evidence." *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998) (emphasis in original) (internal quotations omitted).

56

In this matter, Brown was given notice and an opportunity to present his evidence; in fact, Arbitrator McLeod explained to Brown's counsel that Arbitrator McLeod would not issue a ruling until the following week, in order to give Brown and his counsel time to state any further objections and to provide any further evidence regarding Brown's objection to the Trust Funding Proposal. (App. 1123-27, ¶8; 1126, ¶¶5-7; 1127, ¶10). Regardless, the fact that any sort of "due process" right was violated is irrelevant, as such procedural formalities do not apply to arbitral proceedings. (Add. 003-4). For these reasons, confirmation of the March 14, 2011 Arbitration Award was proper.

## B. There is No Evidence That Arbitrator McLeod Committed Any Misconduct By Receiving Ex Parte Communications.

Contrary to Brown's erroneous argument, there is no evident partiality on the part of Arbitrator McLeod. Ex parte contacts with both parties are proper under the law and Arbitrator McLeod encouraged both parties to engage in ex parte communications in his role as a mediator for the parties. As stated above, the arbitrator derives his powers from the agreement, and in this matter, the Arbitration Agreement specifically gave Arbitrator McLeod the power to establish procedures to be followed for each arbitration between Brown and Brown-Thill:

> The arbitrator shall establish procedures to be followed for each arbitration. If either party fails to follow or abide by the arbitrator's required procedures within the time frames set by the arbitrator, the arbitrator shall be authorized to resolve the issue without the full

participation of the non-abiding party and both parties shall be bound
by the arbitrator's decision.

(Add. 0029, ¶D; App. 0291, ¶D). Additionally, as discussed *supra*, arbitration does not contain the same procedural limitations as litigation. Thus, if Arbitrator McLeod welcomed ex parte contacts from both parties (and in fact did have ex parte contacts with *both* parties), then he could do so, and such ex parte communications were not improper. Brown's argument otherwise has no foundation, as Brown participated in his own ex parte communications with Arbitrator McLeod. (App. 0653).

Furthermore, no provision of the FAA prohibits ex parte contacts, which often occur in arbitration proceedings. *See, e.g., Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751 (8th Cir. 2003); *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1176 (9th Cir. 2010). The Eighth Circuit has determined that ex parte contacts do not demonstrate "evident partiality." *Dow Corning Corp.,* 335 F.3d at 751. As the district court clearly recognized, Brown has not cited a shred of evidence showing any partiality on the part of Arbitrator McLeod. Like in *Dow Corning*, Arbitrator McLeod had administrative reasons for contacting Brown-Thill's counsel and Friend Cooper, LLC, and a legitimate reason for deciding that he needed to contact them one at a time or at the same time. *Id*. Furthermore, Arbitrator McLeod informed both parties he would not make any decision influenced by ex parte contacts without giving the other side a chance to

58

reply. (App. 0653). Brown has also failed to present any evidence that any ex parte communications were prejudicial to Mr. Brown. Therefore, under the standards articulated in the FAA, there has been no partiality on the part of Arbitrator McLeod. Such cases further support the fact that Arbitrator McLeod's ex parte communications with both parties were proper, and are thus no reason for vacating the Award.

## VII. The District Court Did Not Err In Concluding that Brown's Allegations That Arbitrator McLeod Exhibited Partiality Were Completely Without Merit.

In his last argument, Brown asserts that Arbitrator McLeod is guilty of evident partiality based solely on Arbitrator McLeod's receipt of ex parte communications. However, Brown fails to cite to one case that would support his absurd contentions. In reality, as the district court determined, each of the cases cited by Brown further confirms that there was no improper conduct or bias on the part of Arbitrator McLeod.

Brown cites to 9 U.S.C. § 10(a)(2) of the FAA which states, in part, that a court may vacate an arbitrator's award when there is evidence of "partiality." Brown then goes on to cite two cases decided by this Court that say a court may vacate the award based on this statute, even in the absence of evidence, when the arbitrator fails to disclose "non-trival interests in the outcome or relationships with the parties or others having a substantial interest in the outcome." The first case

Appellate Case: 13-1708    Page: 68    Date Filed: 09/03/2013 Entry ID: 4071272

Brown cited is *Montez v. Prudential Secs.,* 260 F.3d 980 (8th Cir. 2001). In *Montez*, the court found no evidence of partiality, and thus did ***not*** vacate the arbitration award. *Id*. at 984. *Montez* went further to explain that the relationship between the arbitrator and one of the parties involved was a tenuous connection through the arbitrator's prior employment at a law firm that had ceased 5 years prior. *Id*. The court mentioned "business" several times in the context of what types of interests could be construed as an interest that would lead to bias or partiality; it gives the impression that the typical biased relationship would be one of a business or financial nature. *Id*. Nowhere in the opinion can one find Brown's contention that "absence of evidence" is a standard that courts may follow when deciding whether to vacate an arbitration award.

The other case on which Brown relies regarding this issue is *Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 51 F.3d 157 (8th Cir. 1995), which is also easily distinguishable from this matter. The arbitrator in that case failed to disclose that he was a vice president with a firm that did a substantial amount of business with one of the parties. *Id*. at 158. Again, the court opinion focused on two key elements: non-disclosure and a business relationship. *Id*. at 159. Also, like *Montez*, there was never any mention that a lack of evidence showing bias or partiality still entitles a court to vacate an arbitration award. (*See* generally *Olson,* 51 F.3d 157). In fact, *Olson* specifically states that it ***was*** presented with evidence,

60

and that it determined the **evidence** presented showed the partiality. *Id*. at 160. Here, conversely, Judge Wright's Order expressly states that Brown did not present evidence demonstrating partiality or bias, but instead presented some time sheets from Cooper. (Add. 0025).

The gist of Brown's argument seems to be that the ex parte communications the arbitrator had with Cooper and others were undisclosed and, because those parties had a substantial interest in the outcome, these ex parte communications were thus in violation of 9 U.S.C. § 10(a)(2). As stated above, Brown did not have any evidence to support these alleged "numerous and undisclosed meetings" (as he calls them) at the trial court level, nor would such evidence support a finding of partiality.

Besides, as Judge Wright noted in his decision, Brown, by agreeing to use Arbitrator McLeod as a mediator and arbitrator, also expressly authorized ex parte communications, and Brown has not meet his standard of showing how any ex parte communications between Arbitrator McLeod and Brown's opposition influenced the outcome of the arbitration. (Add. 0024). Again, there is just Brown's bare accusation that Arbitrator McLeod's ex parte conduct demonstrates evident partiality, with no evidence presented to support it.

Appellate Case: 13-1708    Page: 70    Date Filed: 09/03/2013 Entry ID: 4071272

## **CONCLUSION**

For all of the forgoing reasons stated herein, Appellant Brown-Thill respectfully requests that the Court of Appeals uphold the district court's Order confirming the March 14, 2011 Arbitration Award in its entirety and overturn the district court's denial of Brown-Thill's request for her costs, losses and attorneys' fees and remand this cause to the district court for further proceedings in determining the amount of Brown-Thill's costs, losses and attorneys' fees to be awarded, and such further relief as the Court deems just, proper and appropriate.

Dated: August 30, 2013          Respectfully submitted,

LAW OFFICES OF GEORGE A. BARTON, P.C.

/s Stacy A. Burrows
Stacy A. Burrows          Ks Bar No. 21310
George A. Barton          Mo Bar No. 26249
4435 Main Street, Suite 920
Kansas City, MO 64111
(816) 300-6253
(816) 300-6259 – Fax

*ATTORNEYS FOR APPELLANT BROWN-THILL*

62

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Stacy Burrows, hereby certify as follows:

1. This Response and Reply Brief of Appellant Susan Brown-Thill ("Brief") complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), this Brief contains 13,959 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in size 14 font, Times New Roman type style.

3. Pursuant to Eighth Circuit Rule 28A(h), I also hereby certify that the electronic files of this Brief, which has been submitted to the Clerk via the Court's CM/ECF system, have been scanned for viruses and are virus-free.


*/s Stacy A. Burrows*
Stacy A. Burrows    Ks Bar No. 21310

Appellate Case: 13-1708    Page: 72    Date Filed: 09/03/2013 Entry ID: 4071272

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this 30th day of August, 2013, served a true and correct copy of the foregoing via the Court's electronic filing system, on the following:

Joel B. Laner
Hazelton & Laner
4600 Madison
Suite 650
Kansas City, MO 64112

Philip Loree
Loree & Loree
7 Bayview Terrace
Manhasset, New York 11030

*s/ Stacy A. Burrows*

Appellate Case: 13-1708    Page: 73    Date Filed: 09/03/2013 Entry ID: 4071272