# 13-1708
# 13-1795

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

RICHARD L. BROWN,

*Plaintiff-Appellee-Cross-Appellant,*

*v.*

JAMES COOPER,

*Defendant,*

SUSAN BROWN-THILL,

*Defendant-Appellant-Cross-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

## APPELLEE'S REPLY BRIEF

LOREE & LOREE
*7 Bayview Terrace*
*Manhasset, New York 11030*
*(516) 627-1720*

*-and-*

HAZELTON & LANER
*4600 Madison, Suite 650*
*Kansas City, Missouri 64112-0000*
*(816) 753-5678*

**ORAL ARGUMENT REQUESTED**

*Attorneys for*
*Plaintiff-Appellee-Cross-Appellant*
*Richard L. Brown*

Echo Appellate Press, Inc. • 30 West Park Avenue • Long Beach, New York 11561 • (516) 432-3601
Printed on Recycled Paper       20167

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................III

ARGUMENT ....................................................................................................1

POINT I....................................................................................................1

THE ARBITRATOR EXCEEDED HIS POWERS BY PURPORTING TO
DECIDE A DISPUTE NOT SUBMITTED TO HIM AS REQUIRED BY THE
CLEAR TERMS AND CONDITIONS OF THE AGREEMENT AND THE FAA.1

    A.    Thill's Assertions that the Arbitrator Enforced and Applied the Clear
Terms of the Agreement are Misplaced ..................................................................2

    B.    The Procedural Arbitrability Doctrine is Irrelevant ....................................12

POINT II ..................................................................................................14

THILL'S ARGUMENT THAT THE ARBITRATOR DID NOT MANIFESTLY
DISREGARD THE TRUST INSTRUMENT IS MISPLACED ...........................14

    A.    Thill Effectively Concedes that the Arbitrator Simply Substituted his
Judgment for Brown's............................................................................................14

    C.    Thill's Argument that Brown Contracted Away His Discretionary
Authority Cannot be Squared with the Trust Instrument, the Uniform Trust Code
or the Federal Arbitration Act ..............................................................................22

    D.    Thill's Estate Tax Arguments are Misplaced ............................................25

POINT III..................................................................................................27

i

THE ARBITRATOR EXCEEDED HIS POWERS BY ARROGATING TO HIMSELF THE POWER TO SIGN CORPORATE AND BUSINESS DOCUMENTS ON BROWN'S BEHALF.............................................................27

POINT IV..........................................................................................28

THILL'S ARGUMENTS CONCERNING THE ARBITRATOR'S PROCEDURAL MISCONDUCT ARE MERITLESS ...........................................28

POINT V ...........................................................................................31

THE ARBITRATOR IS GUILTY OF EVIDENT PARTIALITY .........................31

CONCLUSION ...................................................................................33

CERTIFICATE OF COMPLIANCE....................................................35

Appellate Case: 13-1708     Page: 3     Date Filed: 10/15/2013 Entry ID: 4085477

# TABLE OF AUTHORITIES

**Cases**

*Advanced Bodycare v. Thione*, 524 F.3d 1235, 1240 (11th Cir. 2008) ...................12

*Ball v. Mills*, 376 So.2d 1174, 1182 (Fla. App. 1st Dist. 1979) .............................20

*Boise Cascade Corp. v. Paper-Allied Indus.*, 309 F.3d 1075, 1080-87 (8th Cir. 2002) ............................................................................................................ 9, 13

*Brent v. Smathers*, 547 So.2d 683, 686 (Fla. App. Dist. 3 1989) ...........................20

*Bureau of Engraving v. Graphic Comm. Int'l Union*, 284 F.3d 821, 825 (8th Cir. 2002) ............................................................................................................1

*Chochorowski v. Home Depot U.S.A.*, No. SC92594, 2013 WL 3894944, at *15-16 (Mo. Banc. July 30, 2013) ................................................................................11

*Coca-Cola Bottling v. Teamsters Local 688*, 959 F.2d 1438, 1442 (8th Cir. 1992) ............................................................................................................14

*District Of Columbia v. Bailey*, 171 U.S. 161, 173, 177-78 (1898) .......................24

*Domino Group v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 421 n.2 (8th Cir. 1993) ...................................................................................................28

*Dow Chemical v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751-52 (8th Cir. 2003) ..33

Appellate Case: 13-1708    Page: 4    Date Filed: 10/15/2013 Entry ID: 4085477

*Edstrom Indus. v. Companion Life Ins. Co.*, 516 F.3d 546, 553 (7th Cir. 2008), *abrogation in part on other grounds recognized, Affymax v. Ortho-Mcneil-Janssen Pharm.*, 660 F.3d 281, 285 (7th Cir. 2011).....................................10, 11

*Excel Corporation v. United Food and Commercial Workers Int'l Union*, 102 F.3d 1464, 1467-70 (8th Cir. 1996) ...........................................................................13

*Express Scripts v. Aegon Direct*, 516 F.3d 695, 700-01 (8th Cir. 2008)................29

*Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 187-88 (8th Cir. 1988) ...........................................................................................................................9

*John Morrell & Co. v. United Food and Commercial Workers*, 913 F.2d 544, 561 (8th Cir. 1990).....................................................................................................1

*Kiernan v. Piper Jaffray Co.*, 137 F.3d 588, 594 (8th Cir. 1998) .............................1

*Kucana v. Holder*, 558 U.S. 233, ___, 130 S. Ct. 827, 834 n.10 (2010)...................3

*Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 719, 720 (8th Cir. 1999) ..................29

*Local 238 Int'l Broth. Teamsters v. Cargill*, 66 F.3d 988, 990 (8th Cir. 1995) . 1, 32

*M & A Electric. Power v. Local Union No. 702*, 977 F.2d 1235, 1237-38 (8th Cir. 1992) .....................................................................................................................34

*Missouri River Serv. v. Omaha Tribe of Neb.*, 267 F.3d 848, 854-55 (8th Cir. 2001) .........................................................................................................................13

Appellate Case: 13-1708     Page: 5     Date Filed: 10/15/2013 Entry ID: 4085477

*Morelite Constr. Corp. v. New York City Dist. Council*, 748 F.2d 79, 84 (1984)...35

*Northern States Power v. Broth. of Elec. Workers*, 711 F.3d 900, 902-03 (8th Cir. 2013) ..........................................................................................10

*Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 691 (1995) ...........................11

*Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)............................... 28, 29

*Rosenkrantz v. Feit*, 81 So.3d 526, 528-29 (Fla. App. 3rd Dist. 2012) ...................20

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012)................................................................................35

*State ex rel. Vincent v. Schneider* ,   194 S.W.3d 853, 859-60 (Mo. Banc 2006)......2

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767-70 (2010) 13

*U.S. v. American Soc'y of Composers, Authors and Publishers,* 32 F.3d 727, 732-33 (2d Cir. 1994)................................................................................29

**Statutes**

9 U.S.C. § 10(a)(3)..............................................................................30

Fl. Stat. § 736.0105 ..............................................................................24

Fl. Stat. § 736.0111(3) ..........................................................................25

Fl. Stat. § 736.080 ..............................................................................20

Appellate Case: 13-1708     Page: 6     Date Filed: 10/15/2013 Entry ID: 4085477

Fl. Stat. § 736.0814(1) ..................................................................19

Fl. Stat. § 736.0815 ............................................................... 24, 25

Fl. Stat. § 736.0815(1) ..................................................................25

Mo. Rev. Stat.  456.8-815 .............................................................24

Mo. Rev. Stat. § 456.1-105 ............................................................24

Mo. Rev. Stat. § 456.1-111.3 .........................................................25

Mo. Rev. Stat. § 456.1-111.5 .........................................................25

Mo. Rev. Stat. § 456.1-111.6 .........................................................25

**Other Authorities**

JAMS Arbitrators Ethics Guidelines, Guideline VI.C, *available online*

    http://www.jamsadr.com/arbitrators-ethics/ (last accessed 10/4/2013)...............35

National Conference of Commissioners on Uniform State Laws, Uniform

    Mediation Act § 2(1) (2003), *available online*

    http://www.uniformlaws.org/shared/docs/mediation/uma_final_03.pdf (last

    accessed 10/4/2013) ...........................................................................12

The American Arbitration Association Code of Ethics for Arbitrators in

    Commercial Disputes, Effective March 1, 2004, Canon III.B & C, *available*

    *online*

Appellate Case: 13-1708     Page: 7     Date Filed: 10/15/2013 Entry ID: 4085477

http://www.adr.org/aaa/ShowProperty?nodeId=%2FUCM%2FADRSTG_00386

7&revision=latestreleased (last accessed 10/4/2013) ..........................................34

Appellate Case: 13-1708     Page: 8     Date Filed: 10/15/2013 Entry ID: 4085477

# ARGUMENT

## POINT I

### THE ARBITRATOR EXCEEDED HIS POWERS BY PURPORTING TO DECIDE A DISPUTE NOT SUBMITTED TO HIM AS REQUIRED BY THE CLEAR TERMS AND CONDITIONS OF THE AGREEMENT AND THE FAA

Brown demonstrated that the Arbitrator had no "roving commission" to decide what ever disputes he wished provided they fell within the universe of disputes the parties promised to submit to arbitration. This Court has expressly "rejected argument that the scope of the arbitrator's authority is limited only by the arbitration [agreement]," where, as here, the parties' pre-dispute arbitration agreement is merely a promise to submit a broad universe of disputes to arbitration. *John Morrell & Co. v. United Food and Commercial Workers*, 913 F.2d 544, 561 (8th Cir. 1990); *see also Bureau of Engraving v. Graphic Comm. Int'l Union*, 284 F.3d 821, 825 (8th Cir. 2002); *Local 238 Int'l Broth. Teamsters v. Cargill*, 66 F.3d 988, 990 (8th Cir. 1995); *Kiernan v. Piper Jaffray Co.*, 137 F.3d 588, 594 (8th Cir. 1998). "'Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act.'" *Morrell*, 913 F.2d at 561. (quotation omitted)

1

### A. Thill's Assertions that the Arbitrator Enforced and Applied the Clear Terms of the Agreement are Misplaced

Thill does not dispute Brown's contention that the pertinent terms of the Arbitration Agreement (the "Agreement")[1] are unambiguous and thus not subject to construction. *See, e.g., State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859-60 (Mo. Banc 2006). She does not address in any meaningful fashion Brown's argument that there is simply no basis on which the district court could have concluded that the Arbitrator even arguably applied and enforced the Agreement's clear terms and conditions.

Thill relies principally on Joint Counsel's February 25, 2011 e-mail – sent three days after Cooper first notified Brown of the Proposal—but that e-mail does not and cannot satisfy the requirements of Paragraph A of the Agreement. Paragraph A required Thill to "give e-mail notice to [Brown] that [she] deemed an issue to be subject to arbitration," and to "*specify* the issue and the proposed resolution." But the February 25, 2011 e-mail (App. 140)[2] did none of those things. It simply announced to Brown for the first time Thill's "approval" of the Proposal and informed Brown's counsel that *"[i]f* Rick is not in agreement" with Thill about the Proposal, then "we *would*" have a "dispute," which "*would*" be submitted to the

---

[1] Except as otherwise indicated, Brown uses in this Reply Brief the same abbreviations, short-hand terms and conventions that he used in his First Brief.
[2] References to "App. ____" are to Thill's Separate Appendix.

Appellate Case: 13-1708   Page: 10   Date Filed: 10/15/2013 Entry ID: 4085477

Arbitrator. (App. 140; emphasis added) It did not purport to "specify" – i.e., "name or state explicitly or in detail"[3] – what the (concededly not-yet-existent) dispute "would" be, let alone what Thill's "proposed resolution" of that dispute "would" be. (App. 140) In addition to not proposing a resolution, it did not, contrary to the Agreement, signal any intent on Thill's part to negotiate over the next seven days, or to submit the dispute to mediation if those negotiations failed.

Subsequent correspondence shows that, as the events leading up to the Partnership Meeting unfolded, nobody—including non-party Cooper, the Arbitrator or Joint Counsel—believed that February 25, 2011 e-mail was supposed to have initiated paragraph A's dispute resolution procedures. By its terms the Agreement requires the parties to "submit" certain "disputes and controversies" to arbitration "pursuant to" the Agreement's procedural requirements, including those of Paragraph A. Post-February 25, 2011 correspondence, and the Arbitrator's affidavit demonstrate that Thill did not believe there was a "dispute" between the parties until March 8, 2011, and that the Arbitrator did not believe there was such a dispute until after Brown's counsel vetoed the Proposal at the March 10, 2011 Partnership Meeting. (App. 1127):

---

[3] *Kucana v. Holder*, 558 U.S. 233, ___, 130 S. Ct. 827, 834 n.10 (2010) (quoting Webster's New Collegiate Dictionary 1116 (1974)) (noting that "'[s]pecified' is not synonymous with 'implied' or 'anticipated[]'" or "assumed or contemplated").

Appellate Case: 13-1708    Page: 11    Date Filed: 10/15/2013 Entry ID: 4085477

- On Thursday, March 3, 2011, *six days after* Thill's February 25, 2011 e-mail, Cooper notified the parties that he was calling an FLP I and FLP II partnership meeting to be held on March 10, 2011 for purposes of voting on the Proposal. (App 701) Cooper explained: "I am copying [Arbitrator] Rich McLeod on this so that he is aware of what is happening and will be prepared *in the event a dispute arises* between the Trustees of the EDB Trust that is *eventually submitted to arbitration."* (emphasis added) Cooper's e-mail further assured, "we are merely, taking a vote, at this meeting." (App 701; emphasis added)

- On Friday, March 4, 2011, the Arbitrator accepted Cooper's invitation to attend the Partnership Meeting. The Arbitrator, like Cooper, acknowledged that there was no dispute between the parties ripe for mediation or arbitration, stated: "In case my input or award is needed, I will be available by phone and email at 4:00 pm on March 10. I hope I am not needed. If I am, however, I will be able to listen to issues and enter an award by email promptly." (App. 703) Neither Thill nor Brown, however, had requested that the Arbitrator attend the meeting, let alone purport to resolve any disputes about the Proposal that might arise and Brown objected to his unauthorized presence. (Brown First Br. at 21-22)

4

- On Monday, March 7, 2011, Brown's counsel sent an e-mail to the Arbitrator and Joint Counsel objecting to the Arbitrator's unauthorized attendance at the Partnership Meeting and his suggestion that he might "hear issues" and enter an "award by email promptly." Sensing that Cooper had invited the Arbitrator to the meeting so that he might purport to enter an award against Brown ordering him to approve the Proposal if Brown did not vote in favor it, Brown's counsel explained, among other things, "an award compelling Rick to approve a Brown Bear authorization pertaining to the Saurine Brown Trust is outside the purview of the Agreement[;]" "an award based on the contents of a phone conversation, not a hearing or a mediation, does not comply with the arbitration agreement or due process[;]" and any "ruling with regards to the meeting has not been triggered by the procedure in the arbitration agreement." (App. 711)

- On Tuesday, March 8, 2011 -- two days before the telephonic Partnership Meeting and six days before the Arbitrator issued the Award – Joint Counsel announced that there was a dispute that was "a subject for arbitration": "What we now have *now* is a dispute between Rick and Susie. . . ." (App 713; emphasis added) Joint Counsel did not

Appellate Case: 13-1708    Page: 13    Date Filed: 10/15/2013 Entry ID: 4085477

"specify" the "issue" to be submitted to arbitration, let alone any

"proposed resolution." (App 713; see Brown. First Add 0029)[4]

- Having been alerted by Brown's counsel about Thill's failure to

  comply with Paragraph A of the Agreement, and apparently counting

  on the Arbitrator—consistent with his response to non-party Cooper's

  invitation to him to participate in the telephonic Partnership

  Meeting—summarily issuing an award against Brown compelling him

  to approve the Proposal, Joint Counsel belatedly asserted that his prior

  "e-mails were sufficient to trigger your dispute resolution under the

  procedure provided in the Agreement." (App 713)

- Also on March 8, Joint Counsel advised the Arbitrator that "I expect

  that your input may be needed at the telephonic partnership meeting

  of FLP I and FLP II to assist in resolving the dispute that *now* exists

  between Susie and Rick, as co-trustees of the EOB Marital Trust,

  regarding the attached proposal for distributions by FLP I and FLP

  II[,]" and asked the Arbitrator to "[p]lease plan on participating in the

  call, which has been duly noticed for Thursday, [March 10,] at 4:00

  p.m. CST." (App 714; emphasis added)

---

[4]"Brown First Add" refers to Brown's Addendum to his First Brief.

Appellate Case: 13-1708    Page: 14    Date Filed: 10/15/2013 Entry ID: 4085477

- The Arbitrator's affidavit, sworn to January 24, 2012 (App 1125-28), does not contend, or even suggest, that Thill's February 25, 2011 e-mail initiated the procedures required to submit a particular dispute to arbitration under Paragraph A. Instead, the Arbitrator accurately described its substance: "On February 25, 2011, Mr. Thum (counsel for Thill and Cooper) sent a follow-up e-mail to Mr. Laner (Brown's counsel), on which I was also copied, communicating to Brown, through his counsel, that Brown-Thill approved of the [Proposal] and that the parties [sic] were awaiting a response from Brown and Laner regarding Brown's position." (App 1126)

- After discussing Brown's counsel Mr. Ruzicka's request that the Partnership Meeting be continued, and the presentation of the Proposal at the meeting, the Arbitrator noted that a vote was taken and that Ruzicka cast Brown's vote not to approve the Proposal. (App 1127) In the next sentence the Arbitrator concluded: "Therefore there was dispute between Brown and Brown-Thill in their capacities as Co-Trustees of the Eugene D. Brown Trust, a dispute arbitrable pursuant to the Agreement." (App 1127)

Only two conclusions can be reached from these undisputed facts: (a) Thill never submitted the dispute to arbitration at all because, as the Arbitrator

Appellate Case: 13-1708    Page: 15    Date Filed: 10/15/2013 Entry ID: 4085477

concluded, there was no dispute until after Brown's counsel vetoed the Proposal at the telephonic Partnership Meeting; or (b) the earliest date that Thill even arguably submitted the dispute to arbitration was March 8, 2011, when her counsel announced "what we now have is a dispute" and urged the Arbitrator to attend the Partnership Meeting. (Brown First Br. at 22)

The Court need not decide in this case whether the Arbitrator's view of what transpired controls or whether Thill's March 8, 2011 e-mails can collectively be considered a submission of a "dispute or controversy" to arbitration, because either way the result is the same: the award must be vacated because there was no plausible basis on which the Arbitrator could have concluded that a "dispute" was "submitted" to him for arbitration "pursuant to" Paragraph A of the Agreement.

For example, even assuming a "dispute" was properly submitted to arbitration on March 8, 2011, the Agreement did not authorize the Arbitrator to issue an award six days later—one day before the earliest date on which it could be submitted to mediation, and thus before the dispute could be deemed submitted to arbitration. If, as the Arbitrator believes, there was no dispute until after the Partnership vote, then the Arbitrator—even apart from Thill's failure to comply with Paragraph A—simply had no authority to issue an award on an issue that had not been submitted to him. See *Morrell*, 913 F.2d at 561. And, even assuming there was a submission subsequent to the telephonic Partnership Meeting vote, then that

submission cannot possibly have complied with Paragraph A's clear terms for the same reasons that a submission two days earlier on March 8, 2011 could not have complied.

But if the Court were to assume or conclude that there was some plausible basis for finding that the February 25, 2011 e-mail initiated Paragraph A's dispute resolution procedures for submitting "disputes and controversies" to arbitration, then the Arbitrator's view of what transpired is critically important. Where an arbitrator's award does not articulate the basis for its decision, the question for the Court under Section 10(a)(4)'s manifest disregard of the agreement standard is whether there is at least a plausible basis to conclude that the arbitrator applied the clear terms of the parties' contract to the undisputed facts. *See, e.g., Inter-City Gas Corp. v. Boise Cascade Corp*., 845 F.2d 184, 187-88 (8th Cir. 1988).

But, as Circuit Judge Richard A. Posner explained, when an arbitrator reveals that she reached her decision by disregarding the terms of the contract, then her award may be vacated even if a court could divine some barely colorable alternative basis upon which the arbitrator might have reached the same conclusion without contravening the clear terms of the parties' agreement: "Had the arbitrator in this case [which involved a Wisconsin choice-of-law clause] said to hell with Wisconsin law, we could not enforce his award on the ground that had he said nothing we would imagine what he might have said to make it seem that he was

9

applying that law." *Edstrom Indus. v. Companion Life Ins. Co.*, 516 F.3d 546, 553 (7th Cir. 2008), *abrogation in part on other grounds recognized, Affymax v. Ortho-Mcneil-Janssen Pharm.*, 660 F.3d 281, 285 (7th Cir. 2011); *cf. Northern States Power v. Broth. of Elec. Workers*, 711 F.3d 900, 902-03 (8th Cir. 2013) (where award sufficient to show arbitrator found "just cause," arbitrator had no authority to award remedy different than termination).

Here, the Arbitrator did not articulate his reasoning in the Award, but in his affidavit revealed what he thought was the earliest point at which there could have been an "arbitrable dispute" between the parties that would trigger Paragraph A's submission procedures. By arguing that the February 25, 2011 e-mail satisfied Paragraph A, Thill effectively requests the Court to "imagine what [the Arbitrator] *might* have said," had he not submitted an affidavit saying something different, so that the Court could "make it seem that he was applying" Paragraph A. *Edstrom*, 516 F.3d at 553.

Even if the Court were to nevertheless deem the February 25, 2011 e-mail compliant with Paragraph A, Thill does not meaningfully address Brown's argument that Paragraph A expressly provides that "*If* the parties fail to resolve [the] issue [the initiating party "deems subject to arbitration"] within seven calendar days, the issue will be submitted to an arbitrator for mediation, and *if* the mediation is unsuccessful, for binding arbitration." (Brown First Add 0029) The

10

Agreement "unambiguously establishes" submission of a dispute to mediation is "an express condition precedent rather than a promise as the parties employed the unmistakable language of condition," by using the word "if." *See Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 691 (1995); *Chochorowski v. Home Depot U.S.A.*, No. SC92594, 2013 WL 3894944, at *15-16 (Mo. Banc. July 30, 2013) ("if" is conditional).

There is no legitimate dispute that Thill never submitted the dispute to mediation and thus failed to satisfy the clear requirements of Paragraph A, and Thill does not argue otherwise. At best, by referring to the district court's analysis, she is content with the district court's suggestion that the parties somehow were engaged in mediation because they copied the Arbitrator on e-mails.

But as Brown explained in his First Brief (at 57-58), mediation is a term of art in the dispute resolution context, and the common thread in the various definitions is the mediator playing an active role in facilitating resolution of the dispute. (Brown First Br. at 57-58) *See also Advanced Bodycare v. Thione*, 524 F.3d 1235, 1240 (11th Cir. 2008); National Conference of Commissioners on Uniform State Laws, Uniform Mediation Act § 2(1) (2003), *available online* http://www.uniformlaws.org/shared/docs/mediation/uma_final_03.pdf (last accessed 10/4/2013).

11

The district court's—and by extension, Thill's— suggestion that "mediation" might plausibly be construed to have occurred because the parties copied their e-mail communications concerning the Partnership Meeting to the Arbitrator— who was invited to the meeting by a third party, who was never asked to mediate a dispute and who did not take any action to facilitate a resolution of any dispute other than by issuing the Award against Brown— is simply untenable. Because the arbitrator disregarded the clear terms of the Agreement, he exceeded his powers under FAA Section 10(a)(4) and the Award must be vacated. *See, e.g., Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767-70 (2010); *Missouri River Serv. v. Omaha Tribe of Neb.*, 267 F.3d 848, 854-55 (8th Cir. 2001); *Boise Cascade Corp. v. Paper-Allied Indus.*, 309 F.3d 1075, 1080-87 (8th Cir. 2002); *Excel Corporation v. United Food and Commercial Workers Int'l Union*, 102 F.3d 1464, 1467-70 (8th Cir. 1996); *Coca-Cola Bottling v. Teamsters Local 688*, 959 F.2d 1438, 1442 (8th Cir. 1992).

## B.    The Procedural Arbitrability Doctrine is Irrelevant

Like the district court, Thill erroneously assumes that issues within the scope of the procedural arbitrability doctrine are exempt from Section 10(a)(4) review, even if the arbitrator's gateway procedural determination is foreclosed by the clear

Appellate Case: 13-1708    Page: 20    Date Filed: 10/15/2013 Entry ID: 4085477

terms of the parties' agreement. Neither Thill nor the district court cited any authority supporting that proposition and we are not aware of any.

This Court effectively rejected that argument in *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 873 (8th Cir. 2004), one of the cases cited by Thill. And in any event, a number of other Circuit Courts of Appeal have also rejected it. *See Central West Virginia Energy v. Bayer Cropscience*, 645 F.3d 267, 276 (4th Cir. 2011); *Trustmark Ins. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 874 (7th Cir. 2011); (Easterbrook, C.J.); *Lagstein v. Certain Underwriters bat Lloyd's*, 607 F.3d 634, 642-43 (9th Cir. 2010)

13

## THILL'S ARGUMENT THAT THE ARBITRATOR DID NOT MANIFESTLY DISREGARD THE TRUST INSTRUMENT IS MISPLACED

In his First Brief, Brown explained in detail why the Arbitrator exceeded his powers by substituting his own judgment for that of Brown in derogation of the clear terms of the Trust Agreement. (Brown First Br. at 60-67) Just as she failed to meaningfully respond to Brown's arguments concerning the Arbitrator's manifest disregard of the Arbitration Agreement's clear terms, so too, does she as respects the Arbitrator's manifest disregard of the Trust Instrument.

### A. Thill Effectively Concedes that the Arbitrator Simply Substituted his Judgment for Brown's

Thill fails to even acknowledge, let alone address, the exceedingly broad discretion the EDB Trust Instrument vested in Brown and Thill, which includes:

- "Except as otherwise specifically provided in [the Trust Instrument]. . . . [,] full power and authority to do any and all things necessary or proper to manage, control, invest and reinvest the assets constituting the trust estate, consistent with the provisions of this Trust Agreement and of applicable law, in the same manner as if the Trustee [which the Trust Instrument defines to mean "Co-Trustees when more than one Trustee has been appointed and is acting as such. . . ."] were the fee

14

simple owner of the trust estate." (App. 488-537, at Arts. VI.A & V.A(7))

- "In addition to all powers granted to trustees under applicable state law, the powers of management, control and investment" with respect to, "but . . . not limited to," an extensive list of specifically enumerated "rights, powers, obligations, duties, authorities, privileges and immunities, any or all of which may be exercised by the Trustee at any time, or from time to time. . . ," and which include, but are not limited to, those set forth below. (App. 488-537, at Art. VI.C; emphasis added)

- The power and authority to "sell, exchange, . . . assign, transfer or otherwise dispose of any part of the trust estate *upon such terms and conditions as the Trustee shall determine.*" (App. 488-587, at Art. VI.C(1); emphasis added)

- The power and authority to "to exercise all rights and powers exercisable by the Trustee as a partner in any . . . partnership; . . . and . . . perform such further acts . . . as the Trustee may from time to determine in the *absolute discretion* of the Trustee are

15

Appellate Case: 13-1708    Page: 23    Date Filed: 10/15/2013 Entry ID: 4085477

necessary and desirable in respect to any such partnership interest. . . ." (App. 488-587, at Art. VI.C(24); emphasis added)

- The power and authority "[t]o . . . exercise all rights and powers exercisable by the Trustee as a member or income interest holder in any . . . limited liability company; . . . and . . . perform such further acts . . . as the Trustee may from time to time determine, in the *absolute discretion* of the Trustee, are necessary or desirable in respect to any such limited liability company interest." (App. 488-587, at Art. VI.C(25); emphasis added)

The Trust Instrument deems a "majority decision" of the acting co-trustees to be a "unanimous decision" of the acting co-trustees for purposes of "bind[ing] the trust estate" with respect to any matter. (A488-587, at Art. V.G)

Assuming there had been compliance with the clear terms of the Agreement (see Point I, above), the only questions before the Arbitrator were:

1. Did Brown and Thill each have, in their capacities as co-trustees of the EDB Trust, the authority to decide whether or not to commit the EDB Trust's 50% interest in Brown Bear to authorizing and directing Brown Bear, as general partner of FLP I and FLP II, to

16

approve a $2,000,000.00 partnership distribution proposed by the other 50% owner of Brown Bear, the SLB Trust? ("Question 1")

2.      Assuming Brown and Thill had that authority, did they each have the discretion to decide whether to approve or disapprove the Proposal, and if so, what was the scope of that discretionary authority? ("Question 2")

3.      Assuming Thill acted within the scope of her discretionary authority in deciding to vote in favor of the Proposal, did Brown exceed the scope of his discretion in deciding to vote against the Proposal? (Question 3")

The answers to each of these questions were governed by the clear terms of the Trust Instrument discussed above. There is (and could be) no dispute that the answer to Question 1 is "yes," otherwise the vote taken at the telephonic partnership meeting would have been a meaningless gesture.

The answer to Question 2 is that each had the discretion to approve or not approve the Proposal "in the same manner as if" each was "the fee simple owner of the trust estate," especially where, as here, the matter concerned a trust interest in a limited liability company, Brown Bear, acting in its capacity as the general partner of FLP I and FLP II, a matter over which each co-trustee had "absolute discretion."

17

(A 488-537, at Arts. VI.A; V.A(7); VI.C, VI.C(1), VI.C(2), VI.C(24), VI.C(25))

Although even "absolute" discretion is not literally absolute—and thus immune from review—Florida law does not permit courts (or by extension, arbitrators) to second guess a trustee's exercise of such a broad grant of discretion unless the trustee acts in bad faith or otherwise abuses that discretion. (Br. First Br. at 64-65) *See* Fl. Stat. § 736.0814(1) ("A court shall not determine that a trustee abused its discretion merely because the court would have exercised the discretion in a different manner or would not have exercised the discretion.")[5]

The Trust Instrument, and Florida law (which the settlor designated as governing), further define and refine the scope of Brown's and Thill's exceedingly broad discretion. The Trust Instrument expressly required Brown and Thill to "exercise[]" their "discretions, powers and authority . . . in a fiduciary capacity, *prudently* and exclusively in the interest of the beneficiaries." (App. 488-537, at Art. VI.B; emphasis added) And Florida Law demands that trustees and co-trustees at all times act prudently in administering a trust and in a manner consistent with their fiduciary duties, make informed decisions and otherwise "exercise reasonable care, skill and caution" in administering the trust. *See* Fl. Stat. § 736.080; *Brent v.*

---

[5] Readily accessible copies of Florida's and Missouri's Uniform Trust Codes are available online at http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&URL=0700-0799/0736/0736ContentsIndex.html&StatuteYear=2013&Title=-%3E2013-%3EChapter%20736 (Florida) and http://www.moga.mo.gov/statutes/C456.HTM (Missouri).

Appellate Case: 13-1708    Page: 26    Date Filed: 10/15/2013 Entry ID: 4085477

*Smathers*, 547 So.2d 683, 686 (Fla. App. Dist. 3 1989); *see also Rosenkrantz v. Feit*, 81 So.3d 526, 528-29 (Fla. App. 3rd Dist. 2012); *Ball v. Mills*, 376 So.2d 1174, 1182 (Fla. App. 1st Dist. 1979).

Thus, where a trustee choosing between two possible options chooses the one he or she reasonably believes to be the one most likely to reflect "reasonable care, skill and caution" in the circumstances, and in light of available information, then that decision is necessarily within the scope of the trustee's "absolute" discretion, even if choosing the other option might also be within the scope of that discretion.

The answer to Question 3 flows inexorably from applying the answer to Question 2 to the uncontested facts. There was no plausible basis for the Arbitrator to have concluded that Brown abused his absolute discretion to approve or disprove the Proposal because, among other things:

- There is no evidence that Brown acted in bad faith;

- No provision of the Trust required Brown to approve the Proposal;

- Brown had reason to believe that Cooper had misappropriated hundreds of thousands of dollars of trust assets and had commenced breach of trust litigation against Cooper, which is still pending before the Missouri state courts. (Brown First Br. at 17-18).

19

- Given the evidence he had concerning Cooper's misappropriation of trust assets under his control, it would have been imprudent—indeed, naïve and foolish—of Brown to approve a $2,000,000 partnership distribution proposal that would, among other things, move approximately $200,000.00 from the joint control of the EDB and SLB Trusts into the sole control of Cooper's' SLB Trust to satisfy what appeared to (and ultimately turned out to) be a miniscule tax liability. (App. 1144-45)

- That was all the more so given that Brown requested from Cooper, Thill and the Arbitrator the documents and information he needed to understand, among other things, the basis of the Proposal; how the $2,000,000 in distributions would be applied and for what purposes; what the sources of the distributions were; why the Proposal referred to certain Grantor Annuity Trusts ("GRATs") that Brown understood had terminated upon Brown's parents' deaths; why the Proposal did not set forth the amount of tax allegedly and urgently due; why any amount was allegedly due in light of the financial information the SLB Trust had previously sent Brown, which indicated very substantial financial losses that would presumably eliminate any tax liability; why the SLB Trust supposedly needed a cash infusion of

Appellate Case: 13-1708    Page: 28    Date Filed: 10/15/2013 Entry ID: 4085477

nearly $200,000 when it had approximately $587,000 in cash already

on hand; and why the Proposal did not specify the minimum

distribution amount required under the operating terms of the FLPs.

(App. 148-53, 397-403, 406-08, 405-10, 411-12, 435-37, 470-71, 476-

77, 481-86, 682, 705-09)

- Brown advised the Arbitrator and Thill that he could not approve the

  transaction because he needed to review and evaluate pertinent

  financial documentation before he could make an informed and

  prudent decision. (App. 148-53, 435-37, 481, 482, 705-09, 711)

- Cooper, Thill and the Arbitrator refused to provide him with any of

  the requested information, including the amount of income tax Cooper

  claimed was "urgently" due. And the financial information to which

  Brown had access indicated that: (a) the SLB and EDB Trusts'

  income tax liabilities were likely to be relatively trivial; and (b) the

  SLB Trust had (or at least was represented to have) an operating

  account containing approximately $587,000. (Brown First Br. at 23-

  24)

Thill's brief addresses none of these things, and fails to articulate any

colorable basis on which the Award can be reconciled with the clear terms of the

Trust Instrument. Her unsupported assertions that Brown was supposedly "unable

21

to make decisions," and that SLB Trust funding was allegedly an issue that came into play with respect to the parties' prior disputes over estate tax funding, are quite beside the point. The issue is whether there was any basis for the Arbitrator to substitute his judgment for Brown's with respect to whether the EDB Trust should accede to Cooper's Proposal, not whether Brown supposedly had difficulty making decisions that only he was authorized to make, or whether the parties had - discussed trust-funding in the context of other disputes that arose before Cooper advanced his $2,000,000 Proposal.

> ### C. Thill's Argument that Brown Contracted Away His Discretionary Authority Cannot be Squared with the Trust Instrument, the Uniform Trust Code or the Federal Arbitration Act

Thill argues that she and Brown effectively contracted away their discretionary authority by enterining into a facially broad arbitration agreement. According to Thill, she and Brown entered into the Agreement to enable the Arbitrator effectively to cast the tie vote if the siblings could not agree.

But Thill's argument fails because Brown's and Thill's contractual authority as co-trustees was derived from, and circumscribed by, the arbitration-neutral provisions of Florida's Uniform Trust Code, and the Trust Instrument itself. Fl. Stat. §§ 736.0105, 736.0815; Mo. Rev. Stat. §§ 456.8-815, 456.1-105. Like any other person or entity, they could not delegate to another powers or authority that

Appellate Case: 13-1708     Page: 30     Date Filed: 10/15/2013 Entry ID: 4085477

they did not have, or enter into contracts that the Trust Instrument or the Florida trust code does not permit them to make. *See, e.g., District Of Columbia v. Bailey*, 171 U.S. 161, 173, 177-78 (1898) (agreement "must depend for its validity upon the existence of the right to contract" and party cannot contractually delegate to third person authority party does not possess).

Florida's nonjudicial settlement agreement provision is one such limitation on their authority. It does not permit a nonjudicial settlement agreement to "be used to produce a result not authorized by other provisions of this code, including, but not limited to, terminating or modifying a trust in an impermissible manner." Fl. Stat. § 736.0111(3); *see* Mo. Rev. Stat. § 456.1-111.3; Mo. Rev. Stat. § 456.1-111.5; Mo. Rev. Stat. § 456.1-111.6.

To her credit, Thill concedes that the Agreement is a nonjudicial settlement agreement. (Thill Second Br. at 44.) But if the Agreement was, as Thill contends, a mechanism for the Arbitrator to substitute or impose his own judgment for Brown's on matters within the scope of his discretion, then it violates Florida's nonjudicial settlement agreement statute in at least two ways.

First, it would permit the Agreement to "be used to produce a result not authorized by" Florida Uniform Trust Code provisions concerning the scope and exercise of trustee powers. The code authorizes a trustee to, among other things, exercise "powers conferred by the terms of the trust[,]" "except as limited or

23

restricted by this code. . . ." Fl. Stat. § 736.0815(1) The Trust Instrument does not permit the trustees to delegate their discretionary or non-discretionary powers to third persons not under their supervision and control. *See* Fl. Stat. § 736.0807(1). While it permits a co-trustee to delegate the performance of "ministerial and nondiscretionary" acts to another individual co-trustee, it authorizes a co-trustee to delegate discretionary authority only to a corporate co-trustee with whom the other co-trustee is serving, and, in both cases, delegations must be by "written instrument" and may be revoked at any time. (A 488-537, at Arts. VI.F(1) & (2)) (See Brown First Br. at 13-14)

Brown and Thill therefore simply had no authority to enter into any agreement—arbitration or otherwise—which authorized a third person second guess Brown's or Thill's exercise of their broad discretionary powers. They likewise had no authority to delegate their broad discretionary authority to the Arbitrator, let alone to do so in a way that did not allow either party to revoke the delegation at any time. Nor could they enter into an agreement where a person not serving as a fiduciary, let alone one not validly appointed as a co-trustee, could cast a tie-breaking vote whenever Brown and Thill were unable to agree on how to exercise their discretionary powers.

Second, if Thill were correct, then the Agreement would violate the Florida's non-judicial settlement provision by effectively modifying the terms of

24

the Trust in an impermissible manner. The only way the Agreement could accomplish the purpose Thill attempts to ascribe to it would be if the parties could be deemed to have validly delegated to the Arbitrator the power to decide disputes based on whatever norms, rules or principles he or she thought best, even if they contravened the Trust Instrument. That would be the functional equivalent of authorizing the Arbitrator to modify, amend or disregard the Trust Instrument, which Florida's nonjudicial settlement agreement statute prohibits parties from accomplishing by agreement.

### D.    Thill's Estate Tax Arguments are Misplaced

Thill's other arguments likewise can provide no excuse for the Arbitrator's failue to abide by the clear terms of the Trust Instrument. First, Thill cites Articles I.C and II.A(3) of the Trust Instrument concerning the obligation of the EDB Trust's share of *estate taxes* or other taxes which were due upon Saurine Brown's death in March 2009. But the estate tax issue was resolved back in 2010 and by the time Cooper issued the Proposal in 2011, all estate taxes had been paid, and, in any event, the purported justification for the Proposal was the payment of income taxes for the 2010 tax year, which were incurred by EDB and SLB trusts long after Saurine's unfortunate passing in April 2009. (App 478-79) And Cooper refused to disclose what amount of tax the SLB Trust owed, why it was allegedly owed or why a $2,000,000.00 partnership distribution was necessary to address the alleged

Appellate Case: 13-1708    Page: 33    Date Filed: 10/15/2013 Entry ID: 4085477

problem given the more than one-half million dollars in cash that Cooper's

financial information indicated was held by the SLB Trust.

## POINT III

### THE ARBITRATOR EXCEEDED HIS POWERS BY ARROGATING TO HIMSELF THE POWER TO SIGN CORPORATE AND BUSINESS DOCUMENTS ON BROWN'S BEHALF

Thill effectively concedes that arbitrators are not presumed to have the authority to enforce or monitor compliance with their awards unless the parties submit that issue to them for resolution. *See Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); *Domino Group v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 421 n.2 (8th Cir. 1993)

But Thill suggests that the parties nevertheless granted the Arbitrator power-of-attorney by agreeing that "[t]he arbitrator's decision shall have the force and effect of a joint instruction and/or authorization from Richard Lotman Brown and Susan L. Brown-Thill and may be presented as such to third parties, such as trustees and partnerships." (Thill's Second Br. at 52) But that provision simply says third-parties can rely on an arbitration award resolving a dispute between the parties arguably within the scope of the Agreement. It does not even arguably purport to confer any authority on the Arbitrator to *enforce* compliance with an award, let alone grant the Arbitrator power-of-attorney to sign corporate documents on behalf of the trust.

Appellate Case: 13-1708    Page: 35    Date Filed: 10/15/2013 Entry ID: 4085477

Thill also fails to address, and thus effectively concedes, that under the *functus officio* doctrine, the Arbitrator exhausted any authority the parties might have delegated to him when he issued the Award, and thus had no power to retain jurisdiction, let alone for purposes of enforcing compliance with the Award. *See U.S. v. American Soc'y of Composers, Authors and Publishers,* 32 F.3d 727, 732-33 (2d Cir. 1994); *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 719, 720 (8th Cir. 1999); *Ottley*, 819 F.2d at 376. The "joint instruction" provision does not support any inference that the parties agreed to modify or opt out of that default rule.

Finally, Thill misleadingly suggests that the question before the Court is whether the Arbitrator was "arguably construing" the Agreement. (Thill's Second Br. at 53) But the question before the Court is one of arbitrability, which is for the Court to decide independently. *See, e.g., Express Scripts v. Aegon Direct*, 516 F.3d 695, 700-01 (8th Cir. 2008).

## POINT IV

### THILL'S ARGUMENTS CONCERNING THE ARBITRATOR'S PROCEDURAL MISCONDUCT ARE MERITLESS

The Arbitrator denied Brown a fundamentally fair hearing, including by denying him access to evidence "pertinent and material" to his case. 9 U.S.C. § 10(a)(3). If, as Thill contends, the Arbitrator somehow had the authority to substitute his own judgment for Brown's, then the information Brown sought from

28

Cooper through the Arbitrator was highly "pertinent and material" to Brown's defense of his own judgment – without it he couldn't put on a case. *See* 9 U.S.C. § 10(a)(3). And subsequent events show that Brown would have been able to mount a very compelling defense had the Arbitrator told Cooper to hand over the documents and afforded Brown a reasonable period to review them, and to present his arguments at a hearing. (See Brown First Br. at 29-30)

Thill's argument that the parties had been discussing matters relating to trust funding over a period has little, if any, support in the record. But even assuming that was true, that does not mean Brown had an "opportunity" to present evidence that he Thill, Cooper and the Arbitrator refused to provide him access to. It is undisputed that Brown first learned about the $2,000,000.00 partnership distribution proposal on February 22, 2011, that the telephonic partnership meeting was held on March 10, 2011, 2011 and the Award was made two business days later on March 14, 2011. (See Brown First Br. at 18-19, 25-29) During that period Brown made requests for documents and information concerning the Proposal, the vast majority of which was not provided. (See Brown First Br. at 22-24)

Thill's assertion that Brown had a hearing because he was given one business day to object to Thill's proposed award is groundless where, as here, Brown had only limited information about the Proposal, and in any event, the Arbitrator had prejudged the matter without hearing evidence or argument or even

29

revealing what standard, if any, his decision was based on. What Brown submitted to the Arbitrator established beyond a doubt that Brown acted within the scope of his broad discretion, but the Arbitrator had to know that even before he received the letter. (Brown First Br. at 27-29; see also Point II, above.) Because the Arbitrator cannot have been reviewing Brown's judgment based on an abuse of discretion or even a reasonableness standard (see Point II, above), it was all the more important for Brown to have a reasonable opportunity to obtain and present the evidence he needed to defend his decision not to approve the Proposal.

Thill incorrectly asserts that this Court does not evaluate Section 10(a)(3) claims based on a fundamentally fair hearing standard, but this Court's cases are to the contrary. *See, e.g., M & A Elec. Power v.. Local Union No. 702*, 977 F.2d 1235, 1237-38 (8th Cir. 1992) (Section 10(a)(3) review standard is "fair hearing"). Thill's argument is, in any event, based on a misreading of this Court's decision in *Hoffman v. Cargill Inc.,* 236 F.3d 458, 462 (8th Cir. 2001), which did not involve a Section 10(a)(3) prejudicial procedural misconduct claim, but a general attack on an industry arbitration *system* on the ground that it was fundamentally unfair.

30

## POINT V

## THE ARBITRATOR IS GUILTY OF EVIDENT PARTIALITY

The record is replete with evidence of the Arbitrator's extensive, undisclosed ex parte contacts, and establishes, among other things, that the Arbitrator discussed the Proposal with Cooper before Brown even knew it existed, and even discussed the "*arbitration strategy*" against Brown that Cooper and Thill would use to implement the Proposal and serve the interests of the SLB Trust. (Br App. 36-37, 41-45, 507-09, 542-567) The Arbitrator did not disclose these contacts to Brown.

These were not, as Thill suggests, ex parte contacts in connection with mediation) They involved merits issues and Cooper's , Thill's and Bryan Cave's arbitration strategy against Brown.

Thill's reliance on *Dow Chemical v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751-52 (8th Cir. 2003) is misplaced – contrary to her contentions that case does not say that ex parte contacts cannot, as a matter of law, establish evident partiality. The contacts there did not extend to a discussion of the merits or arbitration strategy and concerned a procedural issue about the scope of expert testimony. *Id*.

Contrary to Thill's contentions, the arbitrator's ability to establish "procedures" does not authorize him to engage in conduct that compromises his impartiality or materially risks doing so. And while Thill seems to think that ex

Appellate Case: 13-1708    Page: 39    Date Filed: 10/15/2013 Entry ID: 4085477

parte contacts concerning merits-related issues and arbitration strategy are expected and condoned, that is simply untrue. *See, e.g., M & A Electric. Power v. Local Union No. 702*, 977 F.2d 1235, 1237-38 (8th Cir. 1992) The American Arbitration Association Code of Ethics for Arbitrators in Commercial Disputes, Effective March 1, 2004, Canon III.B & C, *available online* http://www.adr.org/aaa/ShowProperty?nodeId=%2FUCM%2FADRSTG_003867&revision=latestreleased (last accessed 10/4/2013)); JAMS Arbitrators Ethics Guidelines, Guideline VI.C, *available online* http://www.jamsadr.com/arbitrators-ethics/ (last accessed 10/4/2013).

Thill seems to suggest that Brown is required to establish actual bias or actual partiality to obtain vacatur on evident partiality grounds, except in non-disclosure cases involving non-trivial contacts. But no such distinction is warranted or workable. The reason that courts do not require a showing of actual bias is because bias is "always difficult, and indeed, often impossible, to prove." *Morelite Constr. Corp. v. New York City Dist. Council*, 748 F.2d 79, 84 (1984).

That is why in the Second Circuit, and certain other circuits, a party can obtain vacatur by showing that "a reasonable person would have to conclude" that the arbitrator was partial to one of the parties. *Id*. The test is an objective one, which allows evident partiality to "be inferred from objective facts *inconsistent*

32

*with impartiality*" or "*strongly suggestive of bias*." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012)

When a decision maker attends strategy discussions or has other merits-related contacts with one of the parties there is a grave risk that her ability to make impartial decisions will be compromised. A reasonable person with knowledge of the all the facts and circumstances—which here are inconsistent with partiality and strongly suggestive of bias—would conclude that the Arbitrator was partial to Cooper and Thill, biased against Brown or both.

## <u>CONCLUSION</u>

For all of the following reasons, Brown respectfully requests that the Court: (a) reverse the Order and Judgment to the extent it granted Thill's request for confirmation of the Award and denied Brown's request for vacatur; (b) affirm the Order and Judgment to the extent it denied Thill's request for attorney fees; and (c) remand to the district court with instructions to enter judgment vacating the Award.

33

Respectfully submitted,

/s/ Philip J. Loree Jr.
LOREE & LOREE

Philip J. Loree Jr.
NY Bar No. 2336568

7 Bayview Terrace
Manhasset, New York 11030
(516) 365-4708

(516) 627-3752 (Fax)

PJL1@LoreeLawFirm.com


HAZELTON & LANER LLP
Joel B. Laner
Mo. Bar No. 33020
Missouri Counsel of Record
Suite 650
4600 Madison
Kansas City, Missouri 64112
(816) 753-5678
(816) 753-6208 (Fax)

ATTORNEYS FOR PLAINTIFF-APPELLEE-
CROSS-APPELLANT
RICHARD L. BROWN

34

## CERTIFICATE OF COMPLIANCE

I, Philip J. Loree Jr., hereby certify as follows.

1.      This Reply Brief of Plaintiff-Appellee-Cross-Appellant Richard L. Brown ("Brief") complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(C). This Brief contains 6,970 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in size 14 font, Times New Roman type style.

3.      Pursuant to Eighth Circuit Rule 28A(h), I also hereby certify that the electronic files of this Brief, which have been submitted to the Clerk via the Court's CM/ECF system have been scanned for viruses and are virus-free.

/s/ *Philip J. Loree Jr.*
Philip J. Loree Jr.      NY Bar No. 2336568

Appellate Case: 13-1708     Page: 43     Date Filed: 10/15/2013 Entry ID: 4085477

# CERTIFICATES OF SERVICE
# FOR DOCUMENTS FILED USING CM/ECF

## Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on  October 11, 2013 , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ _____

Philip J. Loree Jr.

NY Bar No. 2336568